UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BEVERLY HENRY and
THADDEUS ROUGIER,                                              **JURY TRIAL DEMANDED**

                                Plaintiffs,           **AMENDED COMPLAINT**

vs.

COUNTY OF NIAGARA,
NIAGARA COUNTY SHERIFF'S DEPARTMENT,
DEPUTY SHERIFF RAY TRACY,
DEPUTY SHERIFF RAYMOND
NEEDLE, DEPUTY SHERIFF CRAIG BEITER, and
SHERIFF'S INVESTIGATOR DANIEL DOUGLAS,

                                Defendants.

---

Plaintiffs, BEVERLY HENRY and THADDEUS ROGIER (collectively "Plaintiffs"), as and for their Complaint against Defendants COUNTY OF NIAGARA, NIAGARA COUNTY SHERIFF'S DEPARTMENT, DEPUTY SHERIFF RAY TRACY, DEPUTY SHERIFF RAYMOND NEEDLE, DEPUTY SHERIFF CRAIG BEITER and SHERIFF'S INVESTIGATOR DANIEL DOUGLAS, herein allege that:

**PARTIES**

1.    At all times herein relevant, Plaintiff BEVERLY HENRY (hereafter "HENRY") was born in the Country of Jamaica and became a naturalized citizen of the United States of America on August 16, 1996, and was and is a resident of the State of Connecticut.

2.    At all times herein relevant, Plaintiff THADDEUS ROUGIER (hereafter "ROUGIER"), was born in the Country of Grenada and became a naturalized citizen of the United States of America on September 10, 1993, and was and is a domiciliary of the State of New York and a resident of the State of Tennessee.

3. At all relevant times stated herein, Defendant COUNTY OF NIAGARA was and still is a municipal corporation organized and existing by virtue of the laws of the State of New York.

4. Upon information and belief, at all relevant times stated herein, Defendant NIAGARA COUNTY SHERIFF'S DEPARTMENT was a department of Defendant COUNTY OF NIAGARA, with principal offices in the City of Lockport, County of Niagara, and State of New York.

5. Upon information and belief, and at all relevant times stated herein, Defendant RAY TRACY (hereafter "TRACY") was and is a natural person residing in the County of Niagara and State of New York, and was and is an employee of the Sheriff's Department of the County of Niagara, State of New York.

6. Upon information and belief, and at all relevant times stated herein, Defendant DEPUTY RAYMOND NEEDLE (hereafter "NEEDLE") was and is a natural person residing in the County of Niagara and State of New York, and was and is an employee of the Sheriff's Department of the County of Niagara, State of New York.

7. Upon information and belief, and at all relevant times states herein, Defendant DEPUTY SHERIFF CRAIG BEITER was and is a natural person residing in the County of Niagara and State of New York, and was and is an employee of the Sheriff's Department of the County of Niagara, State of New York.

8. Upon information and belief, and at all relevant times stated herein, Defendant SHERIFF'S INVESTIGATOR DANIEL DOUGLAS was and is a natural person residing in the County of Niagara and State of New York, and was and is an employee of the Sheriff's Department of the County of Niagara, State of New York.

9. Plaintiffs sue Defendants TRACY, NEEDLE, BEITER, and DOUGLAS, public employees, in both their official and individual capacities.

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD GETZVILLE, NEW YORK 14068**
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

2

## JURISDICTION AND VENUE

10. This action arises under the United States Constitution, particularly under the provisions of the Fourth and Fourteenth Amendments to the Constitution and under Federal law, particularly the Civil Rights Act, 42 U.S.C. § 1983.

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

12. At all relevant times stated herein, Plaintiffs were naturalized citizens of the United States of America and Plaintiff HENRY was domiciled in the State of Connecticut and Plaintiff ROUGIER was a resident of both New York and Tennessee.

13. Each of the acts of Defendants TRACY, NEEDLE, BEITER and DOUGLAS were performed in the course of their employment with Defendant COUNTY OF NIAGARA as deputy sheriffs and/or agents of Defendant NIAGARA COUNTY SHERIFF'S DEPARTMENT, and under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of New York and County of Niagara, and under their authority as deputy sheriffs.

14. That each of the acts alleged herein of Defendants TRACY, NEEDLE, BEITER and DOUGLAS constituted state action.

15. Venue is proper pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to this claim occurred in this District; or in the alternative, Defendants are subject to personal jurisdiction in this District.

## ALLEGATIONS PERTAINING TO PLAINTIFFS' CLAIMS

16. On April 28, 2009, Plaintiffs were lawfully traveling together westbound on Interstate Route 190 in the Town of Lewiston, County of Niagara, State of New York in Plaintiff ROUGIER's

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD GETZVILLE, NEW YORK 14068**
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

3

vehicle from their respective residences in Connecticut and New York to Canada for the purpose of visiting friends.

17. Both Plaintiffs, the driver and the passenger of the aforesaid vehicle, were and are African-American and of Caribbean ancestry.

18. Upon information and belief, that at the time aforesaid, Defendant had a policy and practice of racially and ethnically profiling drivers and passengers travelling on highways leading to and from Canada and selectively enforcing their traffic laws and otherwise stopping vehicles based upon the aforesaid racial and ethnic profiling and without regard of whether their conduct was lawful.

19. That in furtherance of this policy, facially neutral provisions of the Vehicle and Traffic Law were applied in an intentionally discriminatory manner.

20. On the aforesaid date and at the aforesaid location Defendant TRACY stopped Plaintiff ROUGIER's vehicle on Interstate Route 190 approximately ½ mile from the American/Canadian border approaching the Lewiston-Queenston Bridge in Lewiston, New York.

21. The purported reason for the stop was that Plaintiff ROUGIER'S vehicle was allegedly following too closely behind another vehicle (§ 1129 of New York Vehicle and Traffic Law), and, secondarily, that Plaintiff ROUGIER'S vehicle had windows that violated the statute regulating the permissible amount of tinting (§375[12-a][b] of the New York Vehicle and Traffic Law).

22. That, in fact, Plaintiff ROUGIER'S vehicle was not following too closely behind another vehicle.

23. Approximately 5-10 minutes after the initial stop, Defendant TRACY approached the passenger side of the vehicle, bent down, looked inside and asked Plaintiff ROUGIER for his license and registration.

**HOGANWILLIG**
**Attorneys at Law**
2410 NORTH FOREST ROAD GETZVILLE, NEW YORK 14068
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

4

24. Plaintiffs' passports were in plain sight, sitting in the cup holder area of the vehicle as they anticipated presenting them at the border.

25. Immediately after Defendant TRACY asked Plaintiff ROUGIER for his license and registration, upon information and belief, he detected Plaintiffs' accents, observed their passports in the cup holder, and based upon such observations, asked Plaintiffs for their passports.

26. Plaintiffs asked Defendant TRACY what the problem was, and Defendant TRACY responded, "I'll let you know when I am done."

27. Defendant TRACY took Plaintiffs' passports and walked back to his vehicle, whereupon another sheriff's vehicle arrived on the scene which was occupied by another Deputy Sheriff and a police dog.

28. The police dog jumped out of Deputy Sheriff's vehicle and immediately proceeded to Plaintiff ROUGIER'S vehicle, at which time the Deputy Sheriff ordered Plaintiff ROUGIER out of the vehicle.

29. Plaintiff HENRY advised the Deputy Sheriff that there was a ham in the trunk of the vehicle and that was what the dog was reacting to, but the Deputy Sheriff told Plaintiff HENRY that the dog was trained to smell narcotics not food and dismissed what she said without any further investigation.

30. When Plaintiff ROUGIER exited his vehicle, he took his camera with him and initiated photographing the scene, including the police dog.

31. Another Deputy Sheriff approached Plaintiff ROUGIER and took the camera out of Plaintiff ROUGIER's hands.

32. Thereafter, a third Defendant NIAGARA COUNTY SHERIFF'S DEPARTMENT vehicle arrived on the scene, and the Deputy Sheriff in that vehicle exited the vehicle, approached Plaintiff HENRY, and asked her to step out of the vehicle.

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD GETZVILLE, NEW YORK 14068**
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

5

33. Plaintiff HENRY asked one of the Deputy Sheriffs if she could get her jacket out of the vehicle, and was advised that he would get it, at which time the Deputy Sheriff retrieved the jacket but searched it without Plaintiff's consent or probable cause before turning it over to Plaintiff HENRY.

34. After Plaintiffs were compelled to stand in the cold for approximately 45-60 minutes, one of the Deputy Sheriffs asked Plaintiff HENRY if she wanted to go into the police vehicle, which she declined to do.

35. At or about that same time, Plaintiff ROUGIER started to walk behind the vehicle, and after taking approximately two (2) steps, the Deputy Sheriff with the scar on his face asked him why he moved and then stated, "I told you not to move."

36. Plaintiff HENRY advised the Deputy Sheriff that they did not hear him say that, at which time the Deputy Sheriff threw Plaintiff ROUGIER against the trunk of the Deputy Sheriff's vehicle and pulled Plaintiff ROUGIER'S hands behind his back as if to handcuff him.

37. Plaintiff HENRY asked why Plaintiff ROUGIER was being cuffed as he did not do anything, at which time the Deputy Sheriff did not cuff Plaintiff ROUGIER, but instead forced him into the back seat of the Deputy Sheriff's vehicle, and impermissibly and unreasonably detained him in said vehicle.

38. Shortly thereafter, the same Deputy Sheriff forced Plaintiff HENRY into another one of the Sheriff's vehicle and impermissibly and unreasonably detained her in said vehicle.

39. While detained in the Sheriff vehicles, Plaintiffs observed a fourth Sheriff's vehicle arrive on the scene, and a Deputy Sheriff exited the vehicle and approached the vehicle Plaintiff HENRY was being held in, opened the door, identified himself as a supervisor, and initiated interrogating Plaintiff HENRY.

**HOGANWILLIG**
**Attorneys at Law**
2410 NORTH FOREST ROAD GETZVILLE, NEW YORK 14068
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

6

40. Plaintiff HENRY advised the supervisor that they were "clean citizens" and that they do not deal in drugs.

41. During the period Plaintiff were detained by Defendants, numerous vehicles passed Plaintiffs, slowing to observe the scene, causing Plaintiffs much angst, shame, humiliation and embarrassment.

42. Thereafter Defendants TRACY, NEEDLE, BEITER, DOUGLAS and other deputy sheriffs, who were now numerous in number on the scene, took Plaintiffs' suitcases, opening them on the side of the road and allowing Plaintiffs' clothing to be thrown onto the wet pavement and the police dog to step and drool all over their clothing, including their personal undergarments, which were exposed to the general public, and all while said Defendants looked on with amusement and laughed.

43. Defendant TRACY then came back to the car where Plaintiff HENRY was being held, at which time she said to him, "Look what your officer doing to us for nothing."

44. Thereafter, Defendant NEEDLE, BEITER, DOUGLAS and/or other deputy sheriffs on the scene advised Plaintiff HENRY that they found a photograph of marijuana plants on Plaintiff ROUGIER's camera and demanded to know where the drugs were, and threatened her with jail.

45. Defendants TRACY, NEEDLE, BEITER, DOUGLAS and/or other deputy sheriffs on the scene then got back into their vehicles, including the vehicles which were holding Plaintiffs, at which time said Defendants falsely claimed that the police dog had smelled narcotics.

46. Upon the pretext that the police dog had smelled narcotics, Plaintiff ROUGIER's vehicle was taken to the US/Canadian border to be x-rayed.

47. Upon arrival at the border, a big white truck pulled up to perform the x-ray, and Plaintiff ROUGIER'S vehicle was again ransacked and pulled apart, as the police dog continued to trample Plaintiffs' clothing and drool all over their personal belongings.

**HOGANWILLIG**
**Attorneys at Law**
2410 NORTH FOREST ROAD GETZVILLE, NEW YORK 14068
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

7

48.  When all efforts by Defendants TRACY, NEEDLE, BEITER, DOUGLAS, and other deputy sheriffs on the scene, to find drugs proved futile, they called over an immigration officer and gave him Plaintiff HENRY'S and Plaintiff ROUGIER's passports.

49.  The immigration officer, identified by Defendants, upon information and belief, as Tamayo, returned approximately 15 to 20 minutes later and advised Defendant TRACY that Plaintiffs were clean all the way around.

50.  After being detained and held by Defendants without probable cause for over three (3) hours, Plaintiff ROUGIER was issued three traffic citations by Defendant TRACY: a vehicle equipment violation; a following too closely violation; and a glass tint violation, for the sole purpose of creating probable cause for a traffic stop where none existed, and Plaintiffs were advised that they were free to go.

51.  The length of Plaintiffs' detention was unreasonable, excessively intrusive, and unjustified.

52.  Moreover, once stopped, there was no probable cause to ask for Plaintiffs' passports and no probable cause to search their vehicle and bring in a police dog, other than for the fact that Plaintiffs were black American nationals from Jamaica and Grenada.

53.  Plaintiffs, who were humiliated, embarrassed and ashamed, and burdened with much angst, anxiety and trepidation, gathered their clothing off the pavement, which was stained and soiled with dog paws, drool and dirt, retrieved the camera, cell phones and other items of personal property from Defendants TRACY, NEEDLE, BEITER, DOUGLAS and/or other deputy sheriffs on the scene, and proceeded to cross the U.S./Canadian border.

54.  Plaintiffs were emotionally, mentally and physically upset by the events which transpired, and Plaintiff HENRY was unable to compose herself or stop crying for several days after the incident.

55.  Moreover, the next day, as a result of sitting in a small confined area in the police vehicle for more than three (3) hours while Defendants, and each of them, searched for narcotics, Plaintiff

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD GETZVILLE, NEW YORK 14068**
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

8

HENRY sought medical treatment for her back at Toronto General Hospital, but because she could not afford the emergency room fee for examination and treatment, she was referred to a local pharmacy for over-the-counter analgesics.

56. As a result of the foregoing, on Plaintiffs' return trip to the United States from Canada on May 4, 2009, when they presented their passports to the immigration officers, Plaintiffs again went through a humiliating and embarrassing situation at the border, when they were again detained, removed from their vehicles, separated, questioned and searched.

57. Since the time of this incident, each time Plaintiffs travel, whether by car or by air, they are detained and humiliated because they have been flagged in the government computers for detention.

58. On May 12, 2010, all of the traffic citations issued against Plaintiff ROUGIER were dismissed by the Hon. Hugh C. Gee, Justice of the Criminal Court, Lewiston Town Court, Lewiston, New York.

59. No charges were ever lodged against either Plaintiff arising out of the unlawful search and seizure and the unreasonable detainment of Plaintiffs, Plaintiffs' vehicle and other belongings.

**AS AND FOR A FIRST CLAIM AGAINST
DEFENDANTS FOR VIOLATION OF CIVIL RIGHTS:
UNREASONABLE SEIZURE AND DEPRIVATION OF
LIBERTY WITHOUT DUE PROCESS OF LAW**

60. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "59" above as though more fully set forth at length herein.

61. At the time Defendant TRACY, while acting under color of state law, demanded that Plaintiffs stop the vehicle in which they were riding, said Defendant did not have reasonable suspicion that Plaintiffs had committed, were committing or were about to commit a crime.

**HOGANWILLIG**
Attorneys at Law
2410 NORTH FOREST ROAD GETZVILLE, NEW YORK 14068
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

9

62. At the time Defendants TRACY unreasonably held and detained Plaintiffs, said Defendant did not have probable cause or a reasonable suspicion to hold and detain Plaintiffs.

63. Defendants TRACY, NEEDLES, BEITER AND DOUGLAS, as officers, agents and/or employees of Defendants COUNTY OF NIAGARA and the NIAGARA COUNTY SHERIFF'S DEPARTMENT, and while acting under color of state law, unreasonably detained Plaintiffs without probable cause for more than three (3) hours, and held and imprisoned Plaintiffs in vehicles owned by, upon information and belief, Defendant COUNTY OF NIAGARA and/or Defendant NIAGARA COUNTY SHERIFF'S DEPARTMENT, in direct violation of Plaintiffs' civil rights under the Fourth Amendment of the United States Constitution, as applied to the states by the Fourteenth Amendment of the United States Constitution, to be secure against unreasonable seizure of their persons.

64. That said seizure and detention was prolonged, intrusive, unjustified and served no governmental purpose beyond the normal goals of an investigative detention.

65. The aforesaid conduct employed prior to and during the detainment and imprisonment of Plaintiffs by Defendants TRACY, NEEDLE, BEITER AND DOUGLAS was in direct violation of Plaintiffs' civil rights under the Fourteenth Amendment of the United States Constitution to be secure against deprivations of liberty without due process of law.

66. As a result of the foregoing, Plaintiffs have been injured and damaged, and were subjected to humiliation and embarrassment, all to their damage in the sum of ONE MILLION DOLLARS, plus punitive damages in the amount of THREE MILLION DOLLARS against the individual Defendants.

### AS AND FOR A SECOND CLAIM AGAINST DEFENDANTS FOR VIOLATION OF CIVIL RIGHTS: RACIAL PROFILING AND DISCRIMINATION BASED ON RACE AND NATIONAL ORIGIN

67. Plaintiffs repeat and re-allege each and every allegation marked and numbered "1" through "66" above as though more fully set forth at length herein.

**HOGANWILLIG**
Attorneys at Law
2410 NORTH FOREST ROAD GETZVILLE, NEW YORK 14068
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

10

68. Plaintiffs were detained without probable cause by Defendants TRACY, NEEDLE, BEITER AND DOUGLAS, as officers, agents and/or employees of Defendants COUNTY OF NIAGARA and the NIAGARA COUNTY SHERIFF'S DEPARTMENT, while acting under color of state law, based upon racial and/or national origin profiling, and said discrimination was condoned and approved by the supervisor at the scene who assisted the Deputy Sheriffs in impermissibly and without reasonable suspicion detaining Plaintiffs for more than three (3) hours, in conformance to the policy and practice of Defendants to racially and ethnically profile persons travelling on the highways leading to and from Canada and to selectively enforce the traffic laws of the State of New York, including, but not limited to the New York Vehicle and Traffic Law based upon the aforesaid profiling.

69. Defendants racially and ethnically profile persons travelling on the highways leading to and from Canada and selectively enforce the traffic laws of the State of New York, including, but not limited to, the New York Vehicle and Traffic Law, based upon the aforesaid profiling.

70. That under the pretense of enforcing facially neutral provisions of the New York Vehicle and Traffic Law, Plaintiffs were stopped and their vehicle and personal possessions subjected to repetitive and redundant searches.

71. That upon information and belief, similarly situated persons who are not African-Americans of Caribbean origin have been treated differently insofar as they have not been stopped and subjected to the prolonged and invasive detention and the repetitive and redundant searches endured by Plaintiffs.

72. At the time Defendants TRACY, NEEDLE, BEITER AND DOUGLAS, as officers, agents and/or employees of Defendants COUNTY OF NIAGARA and the NIAGARA COUNTY SHERIFF'S DEPARTMENT, and while acting under color of state law, were asked for their passports, Plaintiffs were singled out because of their race and national origin for treatment that was disparate to the treatment they

**HOGANWILLIG**
Attorneys at Law
2410 NORTH FOREST ROAD GETZVILLE, NEW YORK 14068
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

11

would have received under the same or substantially similar circumstances but for their race and/or national origin.

73. That facially neural provisions of the New York Vehicle and Traffic Law were applied in an intentionally discriminatory manner.

74. Defendants had no probable cause to suspect that a crime had been committed, was being committed, or was about to be committed by Plaintiffs.

75. Upon information and belief, Plaintiffs did not commit a traffic violation in Defendants' presence and there were no items or objects in plain view in their automobile that would cause Defendants to have a reasonable suspicion that a crime was in progress or was about to be committed.

76. After Plaintiffs were locked and imprisoned in the back seat of two separate Sheriff vehicles for more than two (2) hours, Plaintiff ROUGIER was issued tickets for minor traffic infractions as a pretext for Defendants' disparate treatment of Plaintiffs based upon their races and national origins.

77. During Plaintiffs' period of imprisonment, detainment and confinement, Defendants TRACY, NEEDLE, BEITER AND DOUGLAS addressed Plaintiffs' with attitudes of disgust and distain both in their voices and their mannerisms.

78. Based upon the aforesaid conduct, Defendants racially profiled and discriminated against Plaintiffs during their respective impermissible detainments based on their races and national origins and in direct violation of their rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution as well as Title VI of the Civil Rights Acts of 1964 as codified at 42 USC § 2000d, *et seq*.

79. As a result of the foregoing, Plaintiffs have been injured, and were subjected to humiliation, shame and embarrassment, all to their damage in the sum of ONE MILLION DOLLARS, plus punitive damages in the amount of THREE MILLION DOLLARS against the individual Defendants.

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD GETZVILLE, NEW YORK 14068**
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

12

**AS AND FOR A THIRD CLAIM AGAINST DEFENDANTS:
INTERFERENCE WITH PLAINTIFFS' RIGHT TO TRAVEL**

80. Plaintiffs repeat and re-allege the allegations made in paragraphs "1" through "79" above as though more fully set forth length herein.

81. Plaintiff HENRY is a resident of Connecticut and Plaintiff ROUGIER is a domiciliary of New York and a resident of Tennessee, and was driving a vehicle legally registered in the State of Tennessee.

82. The Privileges and Immunities Clause of the Fourteenth Amendment of the United States Constitution provides that no state shall make any law which shall abridge the privileges or immunities of the citizens of the United States, including, but not limited to, the right to travel.

83. Defendants TRACY, NEEDLE, BEITER and DOUGLAS, as officers, agents and/or employees of Defendants COUNTY OF NIAGARA and the NIAGARA COUNTY SHERIFF'S DEPARTMENT, and while acting under color of state law and without probable cause or reasonable suspicion, restricted Plaintiffs' right to travel, which restriction was, upon information and belief, recently removed based, upon information and belief, Plaintiffs submission of Traveler Inquiry Forms to the Department of Homeland Security, and all as a result of the stop and unreasonable detainment of Plaintiffs on April 28, 2009.

84. Plaintiffs were engaged in interstate travel at the time they were stopped.

85. Both in New York and Tennessee, the darkness of tint of automobile windows is measured by the visible light transmission percentage (VLT%), which is the percentage of visible light allowed in through the combination of film and the window.

86. In Tennessee the VLT limit is 35%; in New York the VLT limit is 70%.

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD GETZVILLE, NEW YORK 14068**
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

13

87. Plaintiffs' vehicle was registered in Tennessee and was, therefore, subject to the motor vehicle statutes in that state.

88. The enforcement of New York's VLT limit of 70% imposed on a vehicle not registered in its state, but crossing through New York en route to Canada inhibited Plaintiffs rights to freely move between the states.

89. Based upon the aforesaid inhibition, Plaintiffs' civil rights have been violated under the Privileges and Immunities Clause of the Fourteenth Amendment of the United States Constitution.

90. As a result of the foregoing, Plaintiffs have been injured, and were subjected to humiliation, shame and embarrassment, all to their damage in the sum of ONE MILLION DOLLARS, plus punitive damages in the amount of THREE MILLION DOLLARS against the individual Defendants.

WHEREFORE, PLAINTIFFS demands judgment against Defendants as follows:

a) on the First Claim in the sum of ONE MILLION DOLLARS ($ 1,000,000) PLUS THREE MILLION DOLLARS ($3,000,000) punitive damages against the individual Defendants and/or

b) on the Second Claim in the sum of ONE MILLION DOLLARS ($1,000,000) PLUS THREE MILLION DOLLARS ($3,000,000) punitive against the individual Defendants and/or

c) on the Third Claim in the sum of ONE MILLION DOLLARS ($ 1,000,000) PLUS THREE MILLION DOLLARS ($3,000,000) punitive damages against the individual Defendants and/or

d) together with the costs and disbursements of this action, attorneys fees pursuant to 42 USC § 1988(b) and for such other relief as this Court may deem just, proper and equitable.

Dated: May 12, 2011
      Amherst, New York

                                  Yours, etc.

**HOGANWILLIG**
Attorneys at Law
2410 NORTH FOREST ROAD GETZVILLE, NEW YORK 14068
Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com

14

                                      */s/ Steven M. Cohen*
                                      Steven M. Cohen, Esq.
                                      HOGANWILLIG
                                      *Attorneys for Plaintiffs*
                                      2410 North Forest Road
                                      Amherst, New York 14068
                                      Telephone:  (716) 636-7606
                                      scohen@hoganwillig.com

**HOGANWILLIG**
**Attorneys at Law**
**2410 NORTH FOREST ROAD GETZVILLE, NEW YORK 14068**
**Phone: 716.636.7600   Toll Free: 800.636.5255   Fax: 716.636.7606   www.hoganwillig.com**

15