UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BEVERLY HENRY,
THADDEUS ROUGIER,

                              Plaintiffs,

                                                        **Hon. Hugh B. Scott**

                                                        10CV800A

                  v.                                    **Order**

COUNTY OF NIAGARA, et al.,

                              Defendants.

        Before the Court is defendants' motion to compel (Docket No. 43[1]).  Responses to this

motion were due by January 6, 2012, with replies due by January 13, 2012, and that motion was

deemed submitted as of January 13, 2012 (Docket No. 44).  In response to this motion, plaintiffs

filed their cross-motion for a Protective Order (Docket No. 45[2]).  Although no formal briefing

schedule was set for that cross-motion, defendants' reply in support of their motion to compel

also responded to plaintiffs' motion for a Protective Order (Docket No. 46).  Thus, both motions

are deemed submitted as of January 13, 2012, and given their interrelationship will be considered

together in this Order.

---

        [1]In support of their motion, defendants submit their attorney's affidavit (with exhibits),
Memorandum of Law, Docket No. 43; and their attorney's affidavit, Docket No. 46, and replying
Memorandum of Law, Docket No. 46.  In opposition, plaintiffs filed their cross-motion for a
Protective Order, Docket No. 45, described below.

        [2]In support of their cross-motion, plaintiffs submit their attorney's Declaration, exhibits,
and Memorandum of Law, Docket No. 45.  In opposition, as previously noted, defendants submit
their attorney's affidavit, Docket No. 46, and Memorandum of Law, id.

While this motion was pending, defendants also moved for extension of time to file dispositive motions, without opposition by plaintiffs (Docket No. 47).

BACKGROUND

This is a civil rights action where plaintiffs allege unreasonable seizure, racial profiling, and infringement on their right to travel by being stopped and seized by Niagara County Sheriff's deputies when plaintiffs were approaching the Lewiston-Queenston Bridge, Lewiston, New York (see Docket No. 1, Compl.).  Plaintiffs name the County of Niagara, its Sheriff's Department, and two named employees of that department (Ray Tracy and C.S. Page) as defendants (id. ¶¶ 3-7).  Plaintiffs also are suing fifteen John Doe defendants, employees of the Niagara County Sheriff's Department allegedly involved in this incident (id. ¶¶ 8-9).

On April 28, 2009, plaintiffs were driving to Canada when they were stopped by Niagara County Sheriff's deputy Tracy within a half mile of the Lewiston-Queenston Bridge (id. ¶¶ 16-17).  During this stop, another deputy brought a police dog to plaintiffs' vehicle to sniff it (id. ¶¶ 22-24).  The driver of the vehicle, plaintiff Thaddeus Rougier[3], then exited the vehicle and took out a camera to take pictures of this incident, when a deputy approached Rougier and took his camera (id. ¶¶ 25-26).  Another deputy arrived and asked plaintiff Beverly Henry to step out of the vehicle.  She asked to retrieve her jacket but was told officers would get it; when they did, they searched the jacket before handing it to her.  (Id. ¶¶ 27-28.)  Rougier then walked behind the vehicle when he was told by a deputy to not move and then was thrown upon the trunk of the deputy's vehicle with his hands pulled behind him, as if to handcuff him (id. ¶¶ 30-31), but then

---

[3]One part of plaintiffs' motion for leave to amend the Complaint is to correct the spelling of this plaintiff's name in the pleading.  His last name is spelled with and without a "u." Consistent with the decision in this Order, plaintiff's name will be spelt "Rougier."

2

placed him (uncuffed) into the deputy's vehicle (id. ¶ 32).  Henry then joined Rougier in the

deputy's vehicle and both were detained (id. ¶ 33).  More deputies arrived and then plaintiffs'

luggage was removed from the trunk and searched on the side of the road (id. ¶ 37).   Plaintiffs'

vehicle was taken to the United States-Canadian border where an x-ray truck was used to

examine the vehicle, as well as a second physical and canine inspection of the car's contents, not

finding any drugs during this search (id. ¶¶ 41-43).  Defendants then issued plaintiffs traffic

citations[4] after detaining them for over three hours (id. ¶ 45), with these citations later dismissed

(id. ¶ 53).

Plaintiffs allege that defendants violated plaintiffs' civil rights by unreasonably seizing

and detaining them without due process of law (id., First Claim).  Plaintiffs claim that defendants

applied racial profiling based upon the race (African American) and national origin (Henry was

born in Jamaica, Rougier in Grenada) of the plaintiffs (id., Second Claim, ¶¶ 1-2).  Finally, they

allege that defendants interfered with their right to travel (id., Third Claim).

Niagara County, its Sheriff's Department, Tracy and Page answered (Docket No. 5), and

plaintiffs served a Reply to the counterclaim asserted in the Answer (Docket No. 9).  Plaintiffs

were granted leave to amend their Complaint (Docket No. 34, Order of July 5, 2011; see Docket

No. 35 (Amended Compl.), 24 (Motion for leave to amend)).  Defendants answered the amended

pleading (Docket No. 40).  As amended (cf. Docket No. 17), the schedule in this action called for

---

[4]For following too close, operating a motor vehicle with obstructed vision, and equipment
violation of not having transparent sideview or side windows, see Docket No. 43, Defs. Atty.
Aff. Ex. A; but cf. Docket No. 45, Pls. Atty. Decl. ¶ 44 (vehemently denying truth asserted in
report depicted as Exhibit A).

motions to compel discovery to be filed by October 28, 2011, with discovery concluded on

November 28, 2011 (Docket No. 34).

*Defense Motion to Compel*

On December 21, 2011, defendants moved to compel production of the vehicle at issue in

this stop for testing, inspection, and x-raying, and to preserve that vehicle (Docket No. 43).  They

seek to have the vehicle tested and x-rayed within 20 days of entry of an Order to that effect at

the U.S. Customs and Border Protection facility at Lewiston-Queenston Bridge (id., Def. Atty.

Aff. ¶ 2).  In April 2009 during the stop while searching for contraband and potential hidden

compartments, that vehicle was x-rayed at the Lewiston-Queenston Bridge facility and the x-ray

revealed "an anomaly in the trunk area" of that vehicle (id. ¶ 9, Ex. B).  The trunk was examined

and no hidden compartments or contraband was found, save trace amounts of green vegetative

matter in the spare tire well (id.)

Plaintiffs claim, however, that the subsequent deposition testimony did not describe the

anomaly, the materials confiscated from the vehicle were never tested and were not the basis for

an arrest (Docket No. 45, Pls. Atty. Decl. ¶¶ 18-22), and defendants do not now articulate what

they hoped to find in a second x-ray of the vehicle (id. ¶¶ 16-17, 22-23).  Defendants served a

demand that plaintiffs preserve that vehicle, Rougier's 1995 Lexus, and to notify the defense of

its current location (Docket No. 43, Def. Atty. Aff. ¶ 10, Ex. C).  Plaintiffs, however, merely

questioned the legitimacy of the request (id. ¶ 11, Ex. D).

During depositions in this case, defendant Deputy Ray Tracy testified that he was unable

to see into the vehicle due to its tinted windows (id. ¶ 12, Ex. E).  Defendants insisted upon

production of that vehicle to counter plaintiffs' allegations that their traffic stop was pretextual

4

due to their race (id. ¶ 13).  If plaintiffs refused to produce the vehicle, defendants then would

insist upon an inspection (id. ¶ 14, Exs. F, G).  Plaintiffs' counsel delayed in responding to

whether the vehicle would be inspected or not (id. ¶¶ 15-17), defense counsel later learning that

the inspection scheduled for November 28, 2011 (also the discovery cut off date), would go

forward, but in New York, New York (id. ¶¶ 17, 18).  The notice for inspection called for the

vehicle to be inspected at plaintiffs' counsel's offices in Amherst, New York (id., Ex. G[5]).

Plaintiffs insist that defendants inspect the vehicle in New York City, where it presently is

located (id. ¶ 17, Ex. H; see Docket No. 43, Defs. Memo. at 1).  While willing to have it

inspected soon after the November 28 date, plaintiffs' counsel insists that plaintiffs were not

obliged to preserve the vehicle (Docket No. 43, Defs. Atty. Aff. ¶ 19, Ex. J; see id., Ex. H

(offering to furnish the vehicle for inspection "in New York" but not promising to retain it)).

Defense counsel responded that since plaintiffs venued this action in the Western District of New

York, the vehicle must be inspected there (id. ¶ 20).  Plaintiffs failed to respond to defendants'

subsequent inquires about this matter (id. ¶¶ 21-22), leading to defendants' motion to compel.

Defendants contend that an inspection (including x-ray) of the vehicle is material and

necessary to the defense of the case (id. ¶¶ 25, 23-24), but plaintiffs dispute the location for this

discovery (id. ¶ 26).  Plaintiffs note, however, that defendants served an Amended Notice for

Discovery which includes (for the first time) a request to x-ray the vehicle (Docket No. 45, Pls.

Atty. Decl. ¶ 15).  This amended notice calls for the inspection at the Lewiston-Queenston Bridge

facility.

*Plaintiffs' Responding Motion for a Protective Order*

_____

[5]The notice cites to provisions of the CPLR for this inspection.

Plaintiffs cross move for a Protective Order against inspection of the vehicle being conducted in this District and against x-raying the vehicle (Docket No. 45).  They argue that Rule 34(b) does not require preservation of items, that courts have developed a balance between the imminent threat of loss or destruction of evidence against the burden that preserving the evidence would impose (id., Pls. Memo. at 2).  They argue that an inspection in Lewiston would require 16 hours of driving and an overnight stay from New York City (id., Pls. Atty. Aff. ¶ 42). Plaintiffs deny choosing this venue voluntarily; since the incident alleged in this Complaint happened in the Western District of New York, plaintiffs were compelled to file this action there (id. ¶ 43).  Plaintiffs deny the accuracy of Tracy's statement and those of his counsel in reporting the incident (id. ¶ 44).

Defendants counter that plaintiffs conceded that spoliation of the vehicle might occur absent an Order (quoting plaintiffs' counsel's e-mail that it was "a stroke of luck" that Rougier still had the vehicle while disclaiming any obligation to retain it going forward , Docket No. 46, Defs. Atty. Aff. ¶ 6, quoting Docket No. 43, Defs. Atty. Aff. Ex. J).  Defendants argue that plaintiffs have not shown that preserving the vehicle would cause them a hardship (Docket No. 46, Defs. Atty. Aff. ¶ 7).  Plaintiffs assert that the vehicle is Rougier's everyday vehicle, but defendants assert that plaintiffs only retain the vehicle for the duration of this action and not take it out of service (id. ¶ 8), save the time for any inspection or x-ray.  Rougier's financial hardship in bringing this vehicle back to Lewiston does not justify issuing a Protective Order (id. ¶ 13).

DISCUSSION

I.      Applicable Standards

Discovery under the Federal Rules is intended to reveal relevant documents and testimony, but this process is supposed to occur with a minimum of judicial intervention.  See 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2288, at 655-65 (Civil 2d ed. 1994).  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter."  Fed. R. Civ. P. 26(b)(1) (effective Dec. 1, 2007).  Initial disclosure includes producing "a copy of, or a description by category and location of, all documents . . . that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims . . . ."  Fed. R. Civ. P. 26(a)(1)(B).

Federal Rule 26(b)(2)(i) allows this Court to limit the scope and means for discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive."  Under Rule 26(c), this Court may issue a protective order to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense" by not having a proposed disclosure or discovery device, or conditioning the time and manner of that discovery.  Fed. R. Civ. P. 26(c)(1), (1)(B)-(C); see id. R. 26(c)(1)(D) (limit the scope or the matters inquired into).

Federal Rule of Civil Procedure 37(a) allows a party to apply to the Court for an order compelling discovery, with that motion including a certification that the movant in good faith

7

conferred or attempted to confer with the party not making the disclosure to secure that disclosure without court intervention.  Fed. R. Civ. P. 37(a)(2)(A).  Similarly, under Rule 26(c), prior to obtaining a protective order the movants must certify that they have in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court intervention, Fed. R. Civ. P. 26(c).  Under Rule 26(c), the Court has power to protect against abuses in discovery.  Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984).  The appropriateness of a protective order is a balance of the litigation needs of the requesting party and the protectable interests of the party from whom discovery is sought.  Mitchell v. Fishbein, 227 F.R.D. 239, 245 (S.D.N.Y. 2005).  This Court has broad discretion in issuing such a protective order.  Seattle Times, supra, 467 U.S. at 36.

Rule 34 governs inspection of tangible materials in discovery, wherein a party serves a request to enter property to inspect, test a designated object, Fed. R. Civ. P. 34(a)(2).  The notice for such inspection must "specify a reasonable time, place, and manner for the inspection and for performing the related acts," id., R. 34(b)(1)(B).  This Court has discretion, "on objection," to determine "whether and within what limits and under what conditions inspection of documents or things should be ordered," 8A Wright, Miller & Marcus, supra, § 2215, at 444.  One commentator noted that an Order compelling inspection "should be framed so as to cause as little inconvenience as possible to the parties," id. § 2241, at 441.

II.     Application to Discovery Sought

The first issue here is where the inspection of plaintiff Rougier's car should be, in Lewiston, New York (within this District), or New York City (where Rougier resides and where the vehicle is located) and whether that inspection is to include x-raying the vehicle.  Defendants

8

argue, by analogy from the subpoena Rule 45 and its 100 mile range beyond the district

boundaries, and the rule that a non-resident plaintiff's choice of venue compels his or her

deposition in that forum, and that the reasonable place for inspection of material item is in this

district (Docket No. 43, Defs. Memo. at 2-3).

     A.     Location for Inspection of Vehicle

     This is not a case involving records necessary for operation of plaintiff's business or so

voluminous that transporting them would be burdensome; courts in those cases have required the

requesters in those instances to come to the documents rather than require the documents be sent

to them, see 7 Moore's Federal Practice--Civil § 34.14[3], at text accompanying nn.47, 48 (2012)

(citing cases).  Here the item to be inspected is an automobile, the quintessential portable item.

Plaintiffs state the hardship of driving the vehicle up to this District for inspection, but that is not

sufficiently burdensome to preclude this inspection.  Plaintiffs' proposal to conduct the

inspection in New York City would require defendants arranging for an inspection site there with

the added travel costs upon defendants to come to the vehicle.  Plaintiffs have not stated the

necessity for their use of this vehicle.  Plaintiffs, in fact, argue that they have no obligation to

preserve the vehicle, implying that Rougier could discard the vehicle at any time despite it being

his primary vehicle.

     Defendants' motion to compel the inspection of the vehicle in this District is **granted in

part**.  As discussed below, the precise location and manner of that inspection differs from what

defendants sought.  A brief inspection of the vehicle should minimize the inconvenience to

plaintiffs in the temporary loss of the vehicle.  Such an inspection (with whatever photographing

or videotaping that may occur) may preserve images of the exterior of the vehicle such that the actual vehicle may need not be preserved for trial.

In some product liability cases involving tires, the defendant tire manufacturers have developed a protocol wherein they had plaintiffs ship the alleged defective tires to defendants at defendants' expense to have the items inspected at defendants' facilities, see, e.g., Lopez v. Cooper Tire & Rubber Co., No. 3:11-cv-375-J-25-JBT, 2011 U.S. Dist. LEXIS 80695, at *3 (M.D. Fla. July 25, 2011) (Toomey, Mag. J.); Dongdong Huang v. Continental Tire the Americas LLC, No. 10-12598, 2011 U.S. Dist. LEXIS 48812 (E.D. Mich. Mar. 22, 2011).  This Court adopts a similar protocol here:  plaintiffs are to produce the vehicle in question for inspection in this district, with reasonable travel expenses to be paid by defendants.  This way, whatever hardship from this form of discovery is mitigated by defendants paying reasonable travel expenses for bringing the vehicle to this district.

B.      X-Ray of Vehicle

Defendants seek to have plaintiffs' vehicle x-rayed again to "preserve that which was obtained by U.S. Customs and Border Patrol [sic] on the date of the incident, namely, x-ray film(s) depicting an anomaly in the rear of Plaintiff's vehicle" (Docket No. 46, Def. Memo. at 8). But an x-ray now would depict the condition of the rear of that vehicle in its present state and not its condition at the time of the incident.  A second x-ray would do what defendants intend only if the so-called anomaly was unchanged since April 2009.  If available, obtaining copies of the first x-rays from U.S. Customs and Border Protection would show the condition of the vehicle in April 2009.  Whether the vehicle still has that anomaly does not advance defendant's contentions.  This would have been more relevant if this anomaly was the basis for the initial

stop rather than the foundation for prolonging it, despite the fact that this x-ray was not preserved.  Furthermore, according to the contemporaneous report of defendant Daniel Douglas, they offered to x-ray the vehicle back in 2009 to speed the search process and plaintiffs consented to the x-ray (see Docket No. 43, Defs. Atty. Aff. Ex. B).  A second x-ray would be unduly burdensome and oppressive.  Thus, defendants' request to x-ray the vehicle again is **denied**.  As a result, the inspection need not occur at the U.S. Customs and Border Protection facility at the Lewiston-Queenston Bridge.

III.     Preservation of the Vehicle as Evidence

Defendants also move to preserve the vehicle as evidence, given plaintiffs' counsel's responses that they were fortunate that the vehicle still was in Rougier's hands.

Plaintiffs argue that Rule 34 lacks a procedure to protect documents and other tangible items from damage or destruction during the pendency of the case (Docket No. 45, Pls. Memo. at 2, citing Capricorn Power Co. v. Siemens Westinghouse Power Corp., 220 F.R.D. 429, 433 (W.D. Pa. 2004)).  But in this Circuit federal common law and the rules have been recognized to create a duty on parties to preserve property from damage or destruction that could potentially serve as evidence in a lawsuit, R.F.M.A.S., Inc. v. So, 271 F.R.D. 13, 21 (S.D.N.Y. 2010) (Dolinger, Mag. J.); West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999).  The duty to preserve evidence is ongoing, Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 433 & n.79 (S.D.N.Y. 2004); R.F.M.A.S., supra, 271 F.R.D. at 24.  "Spoilation is 'the destruction of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation,'" Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (quoting West, supra, 167 F.3d at 779).  Spoilation of evidence "germane 'to

proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction.'" Zubulake, supra, 220 F.R.D. at 216 (quoting Kronish v. United States, 150 F.3d 112, 126 (2d Cir. 1998)).  The determination of the appropriate sanction for spoliation is left to the sound discretion of this Court, authorized by the Federal Rules and this Court's inherent powers, Zubulake, supra, 220 F.R.D. at 216 & n.12 (citing cases).  As noted by the court in Zubulake, 220 F.R.D. at 216, "a party can only be sanctioned for destroying evidence if it had a duty to preserve it," holding that the "obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation," Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 436 (2d Cir. 2001); Zubulake, supra, 220 F.R.D. at 216.  The duty to preserve extends to "any documents or tangible things (as defined by Rule 34(a)) made by individuals 'likely to have discoverable information that the disclosing party may use to support its claims or defenses," Zubulake, supra, 220 F.R.D. at 217 (citations omitted); West, supra, 167 F.3d at 778-79 (holding sale of tire changing machine and air compressor that defendants contended contributed to plaintiff's injuries constituted spoliation), and this duty includes any "information that is relevant to the claims or defenses of any party, or which is 'relevant to the subject matter involved in the action,'" Zubulake, supra, 220 F.R.D. at 217 (emphasis in original, quoting Fed. R. Civ. P. 26(b)(1)).  This duty then turns on when the duty to preserve attaches and what evidence must be preserved, id. at 216.

As for when the duty attaches, here plaintiffs' duty to preserve the vehicle arose when defendants first noticed its production for inspection, see R.F.M.A.S., supra, 271 F.R.D. at 23 ; Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 72 (S.D.N.Y. 1991), on or about June 22,

2011 (see Docket No. 43, Defs. Atty. Aff. Ex. C).  It is at that point, and not earlier, when it was clear that the vehicle may have been relevant evidence for a defense in this case, that is the suspicion leading to probable cause to stop the vehicle in the first place.

As for the what must be preserved, as the court in Zubulake noted, supra, 220 F.R.D. at 217, anyone who is a party in litigation "must not destroy unique, relevant evidence that might be useful to an adversary."  Here, the vehicle (or its exterior as of April 2009) is unique, relevant evidence as to the basis for the officers stopping it and the vehicle should be preserved.

A third issue is how long must plaintiffs preserve the vehicle.  The duty of preservation obligates plaintiffs to preserve the vehicle until defendants have had an opportunity to inspect it, see R.F.M.A.S., supra, 271 F.R.D. at 33 (in jewelry copyright and trade dress infringement action, defendants held to preserve exemplars of allegedly infringing jewelry until plaintiff had inspected it), or risk the charge of spoliation.  Plaintiffs have not indicated a present intention to dispose of the vehicle or indicated that further retention would be burdensome but, given defendants' notice to inspect it, plaintiffs now cannot dispose of the vehicle until after it has been inspected.

While plaintiffs have not indicated that they intend to dispose of the vehicle in the near future, the inspection so ordered here may obviate the need to preserve the actual vehicle as evidence.  This is not an automobile accident case, where the physical condition of the vehicle is so pertinent to the claims and defenses that the vehicle needs to be preserved for trial; rather, this is a civil rights action for unreasonable seizure (among other claims) where the issues stem from the physical appearance of the vehicle as of April 2009 when the officers stopped it.  Therefore, **plaintiffs are to preserve the vehicle until it has been inspected**.  The parties are to discuss a

mutually agreeable site (as well as time and date) for inspection of this vehicle within this

District.

IV.     Amending the Scheduling Order

Without objection from plaintiffs (Docket No. 47, Defs. Atty. Aff. ¶ 9, Ex. A), defendants

also seek to extend the deadline for dispositive motions.  They seek an extension for sixty days,

with the starting point dependent upon whether this Court orders the inspection of the vehicle or

not (id. ¶ 10).  Given that this Order compels the limited inspection of the vehicle but leaves to

the parties to set the mutually agreed date for that inspection, the dispositive motion deadline will

not be tied to a yet-to-be determined inspection date.  By setting a date not tied to the inspection,

the parties will be focused upon completing discovery without further delay.

Extension of the amended Scheduling Order (see Docket No. 34) is **granted**, but

extended by sixty days from the current deadlines, as follows:

**SECOND AMENDED SCHEDULING ORDER**

1.      Dispositive motions, if any, shall be filed no later than **April 27, 2012**.  Such

motions shall be made returnable before the Magistrate Judge.

2.      The referral to mediation shall terminate on **May 29, 2012**.  In the event that

settlement is not reached, the case will progress toward trial, as scheduled below.

The referral of this case to mediation will not delay or defer other dates contained

in this Scheduling Order and has no effect on the progress of the case toward trial.

CONCLUSION

For the reasons stated above, defendants' motion to compel (Docket No. 43) is **granted**

**in part** while plaintiffs' motion for a Protective Order against that disclosure (Docket No. 45) is

14

**denied in part, granted in part**.  In particular, the vehicle in question shall be produced for inspection in the Western District of New York, at a location, date and time mutually agreed to by the parties, and defendants shall reimburse plaintiff Rougier of his reasonable expenses related to bringing the vehicle to the inspection and returning it.  This vehicle **shall not be x-rayed**.

Defendants' motion for extension of time to file dispositive motions (Docket No. 47) is **granted**.  Dispositive motions are now due by **April 27, 2012**, and referral to mediation will end on **May 29, 2012**.

So Ordered.

/s/ Hugh B. Scott
_____
Honorable Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
       February 9, 2012