UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BEVERLY HENRY,
THADDEUS ROUGIER,

                              Plaintiffs,

                                                    **Hon. Hugh B. Scott**

                    v.                              10CV800A

                                                    **Report
                                                    &
                                                    Recommendation**

COUNTY OF NIAGARA, et al.,

                              Defendants.



This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket No. 7). The instant matter before the Court is defendants' motion for summary

judgment (Docket No. 50[1]).

Responses to this motion initially were due May 29, 2012, any replies by June 12, 2012,

and argument was scheduled for this motion (Docket No. 51; see also Docket Nos. 53, 54

(resetting argument)). This Court later determined that, upon review of the papers, oral argument

---

[1] In support of this motion, defendants submitted the Affidavit of Scott Hawkins, defense counsel's Affidavit (with exhibits), their Statement of Uncontested Facts, their Memorandum of Law, Docket No. 50; a second Affidavit of Hawkins (a copy of Docket No. 50 Affidavit), Reply Affidavit of defense counsel, Defendants' Response to Plaintiffs' Local Rule 56 Statement of Undisputed Facts, and Reply Memorandum of Law, Docket No. 55.
    In opposition, plaintiffs submitted their Statement of Undisputed Facts and Responses to Defendants' Undisputed Facts, their attorney's Declaration (with exhibits), the Affidavit of plaintiff Beverly Henry-Daley (see also Docket No. 52, Ex. A, Henry-Daley EBT Tr., at 10 (plaintiff's remarriage)), and their Memorandum of Law, Docket No. 52; their attorneys' Declarations (with exhibit), Docket No. 58.

was unnecessary (Docket No. 56). Upon that review and plaintiffs' objection to reliance of the affidavit of Scott Hawkins, who had not been disclosed as defense expert, this Court ordered defendants to provide plaintiffs with expert disclosure as to Hawkins by August 22, 2012, and granted plaintiffs leave to supplement their response to this motion by September 18, 2012 (Docket No. 57). Following defendants serving their expert disclosure, plaintiffs responded (Docket No. 58). This motion finally was deemed submitted on the papers on September 18, 2012 (Docket No. 57).

## BACKGROUND

*Pleadings*

This is a civil rights action where plaintiffs (African-Americans of Caribbean ancestry) allege unreasonable seizure, racial profiling, and infringement on their right to travel by being stopped and seized by Niagara County Sheriff's deputies when plaintiffs were approaching the Lewiston-Queenston Bridge, Lewiston, New York (see Docket No. 1, Compl.; Docket No. 35, Am. Compl. ¶¶ 17, 16; Docket No. 50, Defs. Statement ¶ 1). As amended (Docket No. 35, Am. Compl.), plaintiffs name the County of Niagara, its Sheriff's Department, and four named employees of that department (deputies Ray Tracy, Raymond Needle, Craig Beiter, and investigator Daniel Douglas) as defendants (Docket No. 35, Am. Compl. ¶¶ 3-8; see Docket No. 50, Defs. Statement ¶¶ 6-8).

On April 28, 2009, plaintiffs were driving to Canada when they were stopped by Niagara County Sheriff's deputy Tracy within a half mile of the Lewiston-Queenston Bridge (Docket No. 35, Am. Compl. ¶¶ 16, 20). The stated reason for the stop was that plaintiffs' vehicle was following too closely behind another vehicle (in violation of New York State Vehicle & Traffic

Law § 1129) and that the vehicle's windows had tinting that exceeded state standards (in violation of Vehicle & Traffic Law § 375[12-a][b]) (id. ¶ 21; see Docket No. 50, Defs. Statement ¶ 12; but see Docket No. 52, Pls. Statement, Regard to Defs. Purported Undisputed Facts ¶ 4 (hereinafter "re Defs. Undisputed Facts") (disputing defense statement)).

During this stop, another deputy brought a police dog to plaintiffs' vehicle to sniff it (Docket No. 35, Am. Compl. ¶¶ 27-29). The driver of the vehicle, plaintiff Thaddeus Rougier, then exited the vehicle and took out a camera to take pictures of this incident, when a deputy approached Rougier and took his camera (id. ¶¶ 30-31). Another deputy arrived and asked plaintiff Beverly Henry to step out of the vehicle. She asked to retrieve her jacket but was told officers would get it; when they did, they searched the jacket before handing it to her. (Id. ¶¶ 32-33.) Rougier then walked behind the vehicle when he was told by a deputy to not move and then was thrown upon the trunk of the deputy's vehicle with his hands pulled behind him, as if to handcuff him (id. ¶¶ 35-36), but then placed him (uncuffed) into the deputy's vehicle (id. ¶ 37). Henry then joined Rougier in the deputy's vehicle and both were detained (see id. ¶ 38). More deputies arrived and then plaintiffs' luggage was removed from the trunk and searched on the side of the road (id. ¶ 42). Plaintiffs' vehicle was taken to the United States-Canadian border where an x-ray truck was used to examine the vehicle, as well as a second physical and canine inspection of the car's contents, not finding any drugs during this search (id. ¶¶ 46-48). Defendants then issued plaintiffs traffic citations (for following too close, operating a motor vehicle with obstructed vision, and equipment violation of not having transparent sideview or side windows, see Docket No. 43, Defs. Atty. Aff. Ex. A; but cf. Docket No. 45, Pls. Atty. Decl. ¶ 44 (vehemently denying truth asserted in report depicted as Exhibit A); Docket No. 52, Pls.

Statement, re Defs. Undisputed Facts ¶ 4), after detaining plaintiffs for over three hours (Docket No. 35, Am. Compl. ¶ 50), with these citations later dismissed (id. ¶ 58).

Plaintiffs allege that defendants violated plaintiffs' civil rights by unreasonably seizing and detaining them without due process of law (id., First Claim). They claim that defendants applied racial profiling based upon the race (African American) and national origin (Henry was born in Jamaica, Rougier in Grenada) of the plaintiffs (id., Second Claim, ¶¶ 1-2; Docket No. 50, Defs. Statement ¶ 1; Docket No. 52, Pls. Statement Undisputed Facts ¶¶ 1-2). Finally, they allege that defendants interfered with their right to travel (Docket No. 35, Am. Compl., Third Claim).

Niagara County, its Sheriff's Department, Tracy and Page initially answered (Docket No. 5), and plaintiffs served a Reply to the counterclaim asserted in the Answer (Docket No. 9). Plaintiffs were granted leave to amend their Complaint (Docket No. 34, Order of July 5, 2011; see Docket Nos. 35 (Amended Compl.), 24 (Motion for leave to amend)). Defendants answered the amended pleading and asserted again counterclaims (Docket No. 40) and plaintiffs replied to defendants' counterclaims (Docket No. 41).

*Defense Motion for Summary Judgment*

According to the moving papers and responses to this motion, Rougier was a naturalized citizen from Grenada, who had a valid driver's license from the state of Tennessee, and he was a domiciliary of New York and a resident of Tennessee (Docket No. 52, Pls. Statement Undisputed Facts ¶¶ 1, 4, 5; Docket No. 50, Defs. Statement ¶¶ 1, 2). Defendants' contend that Rougier does not own property in Tennessee or file taxes there (Docket No. 50, Defs. Statement ¶ 4), and that he was a resident and domiciliary of New York (id. ¶ 2), owning property and paying taxes there

(id. ¶ 3). Plaintiffs dispute whether Rougier was a domiciliary and resident of New York, noting that "residence" and "domicile" are not synonymous (Docket No. 52, Pls. Statement, re Defs. Undisputed Facts ¶ 1). Henry was a naturalized citizen from Jamaica and a domiciliary of Connecticut (Docket No. 52, Pls. Statement Undisputed Facts ¶ 2; Docket No. 50, Defs. Statement ¶¶ 1, 5).

Rougier owned a 1995 Lexus 400 (Docket No. 50, Defs. Statement ¶ 9; Docket No. 52, Pls. Statement Undisputed Facts ¶ 3). The parties dispute the degree of tinting of the windows of that vehicle, with defendants contending that the rear window tint was 20% light transmittance, and the front driver and passenger side windows had 40% light transmittance (Docket No. 50, Defs. Statement ¶ 9; Docket No. 50, 1st Aff. of Scott Hawkins, ¶ 7; see also Docket No. 50, Hawkins 1st Aff. ¶¶ 1-2, 3-5 (explaining his expertise and standards for window tinting in New York State)). Plaintiffs argue that Hawkins had not been disclosed as an expert and, as a result, they dispute defendants' factual statement regarding the window tinting (Docket No. 52, Pls. Statement, re Defs. Undisputed Facts ¶ 2). Defendants contend that Rougier's 1999 Lexus 400 was pulled over on April 28, 2009 (Docket No. 50, Defs. Statement ¶ 11; but cf. id. ¶ 10 (stating that plaintiffs traveled in a 1995 Lexus), but plaintiffs dispute the fact that the vehicle was a 1999 Lexus (Docket No. 52, Pls. Statement, re Defs. Undisputed Facts ¶ 3).

On April 28, 2009, Tracy pulled Rougier over for following too closely behind another vehicle and had windows that violated New York Vehicle and Traffic Law regarding the degree of tinting (Docket No. 50, Defs. Statement ¶ 12). Plaintiffs dispute this since they were never informed of the reason for the stop or that the stated reason was valid (Docket No. 52, Pls. Statement, re Defs. Undisputed Facts ¶ 4; id., Pl. Atty. Decl., Ex. B, Rougier EBT Tr. at 40).

Defendants Needle and Beiter then arrived on the scene as Rougier exited the vehicle (Docket No. 50, Defs. Statement ¶¶ 14-15).  Defendants state that Rougier consented to the search of the vehicle (id. ¶ 16), but plaintiffs contend that he did not agree to the extent of looking inside the vehicle or having a three-hour process including removing the vehicle to the international border for x-ray examination (Docket No. 52, Pls. Statement, re Defs. Undisputed Facts ¶ 5).  Meanwhile, Henry was asked to leave the vehicle and she asked Needle to retrieve her jacket or allow her to retrieve it (Docket No. 50, Defs. Statement ¶¶ 17-18).  Beiter searched the vehicle's exterior with a trained narcotics detection dog and that dog alerted on the rear bumper of the car (id. ¶¶ 19-20).  Tracy then searched the interior of the car and suitcases that were in the trunk of the car (id. ¶¶ 22-23).  Investigator Douglas arrived on the scene and suggested that the vehicle be transported to United States customs at the international border to be x-rayed (id. ¶ 26), with defendants claiming that Rougier consented to that movement (id. ¶ 27).  Rougier, however, testified that he did not consent to the vehicle being x-rayed, he was not told that the vehicle was to be examined in that fashion, and he did not give consent to Douglas to drive his vehicle to United States customs (Docket 52, Pls. Statement, re Defs. Undisputed Facts ¶¶ 8-9).  Defendants then state that plaintiffs were issued traffic citations for following too closely, for having tinted windows, and for having an obstructed view (Docket No. 50, Defs. Statement ¶ 28).  Plaintiffs dispute this, again stating that any of the alleged infractions and the traffic stop were purely pretextual (Docket No. 52, Pls. Statement, re Defs. Undisputed Facts ¶ 10).  Later, the citations were dismissed in Lewiston Town Court (id.; Docket No. 52, Pls. Memo. at 8).

Defendants argue that Niagara County is not vicariously liable for the acts of its Sheriff as a matter of New York State constitutional law (Docket No. 50, Defs. Memo. at 2-3) and that the Sheriff's Department is not a separate legal entity subject to suit, therefore the claims against Niagara County and the Sheriff's Department should be dismissed (id. at 2-3, 3-5). Next, defendants claim qualified immunity bars suit against them since it was objectively reasonable for defendants to believe that they were not violating plaintiffs' rights. They contend that Tracy had probable cause to stop plaintiffs' vehicle and reasonable suspicion to detain them, but if mistaken defendants are entitled to qualified immunity, see Gill v. County of Suffolk, 590 F. Supp. 2d 360, 370-71 (E.D.N.Y. 2008). (Id. at 5-9.) Next, defendants argue that plaintiffs fail to state an unreasonable seizure and deprivation of liberty claim, noting that they do not object to the constitutionality of the search of the vehicle (id. at 9-14). Defendants deny there is any proof of racial profiling to support plaintiffs' second claim or even to raise a material issue of fact (id. at 15-19).

As for plaintiffs' third claim, for their Fourteenth Amendment privilege and immunity right to travel, defendants conclude this claim also should be dismissed (id. at 19-25). First, defendants contend that Rougier is a New York State resident and has only sparse contact with Tennessee, hence the Fourteenth Amendment provision applies only to interstate travel (id. at 21-22). Defendants, however, do not address Henry's claim (a resident of Connecticut). Defendants argue that the Privileges and Immunities Clause of the Fourteenth Amendment is not infringed by enforcement of New York Vehicle and Traffic Law here (id. at 23).

Plaintiffs counter that there are numerous questions of material fact that preclude summary judgment for defendants (Docket No. 52, Pls. Atty. Decl. ¶ 9), citing testimony from defendants Tracy, Needle, Beiter, and Douglas (id. ¶¶ 11-18, 19-28, [2d] 23, [2d] 24-28, 29-30).

In their reply, defendants note that plaintiffs have not raised a triable issue of fact (Docket No. 55, Defs. Reply Memo. at 1-4). They also deny that a material issue of fact is raised by plaintiffs' use of an online dictionary definition of "resident" (id. at 9). They also note that plaintiffs concede the legal status of the Sheriff's Department and the ability of Niagara County to be sued for the actions of sheriff's deputies in this case (Docket No. 55, Defs. Atty. Reply Aff. ¶ 3).

Following the defense making expert disclosures (cf. Docket No. 57), plaintiffs contest Hawkins' testing method, claiming that Hawkins did not clean the windows before measuring their degree of tint (Docket No. 58, Pl. Atty. Cohen Decl. (hereinafter "Cohen Decl.") ¶¶ 9-11, 12, 14, 6-8; id., Pl. Atty. Farrar Decl. (hereinafter "Farrar Decl.") ¶¶ 11, 7). Plaintiffs dispute whether Hawkins' tint meter used during the discovery and inspection of plaintiff Rougier's vehicle was Hawkins' regularly used meter or whether it was fully operational (Docket No. 58, Cohen Decl. ¶ 14; id., Farrar Decl. ¶¶ 7-8). Plaintiffs separately had the tint measured by a window tinting firm in Brooklyn, who found that the total visible light transmission was 35% and within Tennessee's standard (id., Cohen Decl. ¶¶ 15-16, Ex. I). Hawkins found that the light transmission for the front side windows was 30% (Docket No. 55, Hawkins 2d Aff. ¶ 7; Docket No. 58, Cohen Decl. ¶ 5). Plaintiffs note that the manual for the tint meter (Docket No. 58, Cohen Decl., Ex. H) states that any reading beyond ± 2% would demonstrate that something is wrong with the meter, concluding that (given the discrepancy between Hawkins' and plaintiffs'

tests) Hawkins' meter was not properly calibrated when he examined plaintiff Rougier's vehicle (id., Cohen Decl. ¶¶ 17-18, Ex. H, at 5).

**DISCUSSION**

I.      Applicable Standards

        A.      Summary Judgment

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a) (effective Dec. 2010). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Ford, supra, 316 F.3d at 354. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997). While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc.,

9

283 F.3d 121, 124 (2d Cir. 2002); <u>Marvel Characters v. Simon</u>, 310 F.3d 280, 285-86 (2d Cir. 2002). The opponent to summary judgment may argue that he cannot respond to the motion where it shows, by affidavit, "that, for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d).

A party asserting that a fact cannot be or is genuinely disputed must be supported by citing parts of materials in the record "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," <u>id.</u> 56(c)(1)(A).

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2) (effective Jan. 1, 2011). The movant is to submit facts in which there is no genuine issue, <u>id.</u> R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is contended that there exists a genuine issue to be tried, <u>id.</u> R. 56(a)(2). Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, <u>id.</u> Each statement of material fact is to contain citations to admissible evidence to support the factual statements and all cited authority is to be separately submitted as an appendix to that statement, <u>id.</u> R. 56(a)(3).

Here, plaintiffs submitted responses to the defense Statement of Undisputed Facts (Docket No. 52). Thus, any facts not expressly considered by plaintiffs will be deemed admitted pursuant to Local Civil Rule 56.

B.    Qualified Immunity

When confronted by a claim of qualified immunity, one of the first questions for the Court to resolve is whether the facts, taken in the light most favorable to the party asserting the injury, show the official's conduct violated a constitutional right.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  The Saucier Court required district courts to first consider the constitutional question, then considered the qualified immunity question, id.  But the Supreme Court in Pearson v. Callahan, 555 U.S. 223, 236 (2009), overruled Saucier on the order in which these questions are considered in requiring courts to first determine whether a constitutional violation occurred before considering whether defendants enjoy qualified immunity.  Instead, district courts determine in each case whether to consider first the question of immunity or whether a constitutional violation has occurred, id. at 232.  Thus, the order in which this Court may consider a qualified immunity claim is within this Court's discretion.

Government officials performing discretionary functions generally are shielded by qualified immunity from liability in their individual capacities, see Frank v. Reilin, 1 F.3d 1317, 1327 (2d Cir. 1993), "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "If it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity." Anderson v. Creighton, 483 U.S. 635, 641 (1987); Lowth v. Town of Cheektowaga, 82 F.3d 563, 568-69 (2d Cir. 1996).

II.     County Liability

A.     Sheriff's Department

One preliminary matter, plaintiffs concede that defendant Niagara County Sheriff's Department should be removed from this action (Docket No. 52, Pls. Memo. at 9; see Docket No. 50, Defs. Memo. at 3-5). It is recommended that the portion of defendants' motion to dismiss as to the Sheriff's Department be **granted**.

B.     County of Niagara's Liability

Defendants argue that the New York State Constitution, Article XIII, § 13(a), as amended in 1989 allows a county to accept responsibility for the negligent acts of its Sheriff, but it does not establish respondeat superior liability for the county (absent a local law assuming such responsibility), see Marashian v. City of Utica, 214 A.D.2d 1034, 626 N.Y.S.2d 646, 647 (4th Dep't 1995) (Docket No. 50, Defs. Memo. at 3). Plaintiffs argue that the New York State Constitution provision cited by defendants was not meant to bar federal civil rights claims under 42 U.S.C. § 1983 (Docket No. 52, Pls. Memo. at 9, citing Houghton v. Cardone, 295 F. Supp. 2d 268, 279 n.3 (W.D.N.Y. 2003) (Larimer, J.)); see also Weber v. Dell, 804 F.2d 796, 802-03 (2d Cir. 1986). They contend that Niagara County had a policy of selectively stopping and racially profiling motorists with out-of-state license plates, detaining motorists, and rummaging through their effects in the vehicle (Docket No. 52, Pls. Memo. at 10, 11; see also id. at 14 (citing an "unconstitutional custom of Defendant County of Niagara" that was "widespread")). Defendants reply that conclusory allegations are insufficient to show a municipal policy, or to show the existence of the policy from the incident at bar (Docket No. 55, Defs. Memo. at 1-3), DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998); Houghton, supra, 295 F. Supp. 2d at 279.

Plaintiffs fail to show the existence of a Niagara County policy beyond the allegation of what occurred to them or the adoption of a local law for the county to assume the liability of its Sheriff. Plaintiffs did not produce any proof beyond the incident in this case that Niagara County has a policy regarding selective stops and how those stops are conducted. Although plaintiffs point to the degree of training given to the defendant officers on interdiction (see Docket No. 52, Pls. Memo. at 13), they do not discuss what that training was. Without more, plaintiffs' claims attempting to hold Niagara County responsible for the actions of the Niagara County Sheriff fail; claims against Niagara County should be **dismissed**, and the defense motion for summary judgment on this ground (Docket No. 50) also should be **granted**.

III.    Existence of Material Issue of Fact

Plaintiffs contend that there are questions of fact from the testimony of some of the individual defendants (Docket No. 52, Pls. Atty. Decl. ¶¶ 11-28, [2d] 23-28, 29-30), but they fail to state how these facts are disputed or material. Some of the factual disputes noted by plaintiffs, such as stating that the vehicle was a 1999 Lexus rather than 1995 (Docket No. 52, Pls. Statement, re Defs. Undisputed Facts ¶ 3), are not material.

There are, however, material issues of fact regarding the degree of tinting of plaintiffs' windows that would provide cause to stop their vehicle and, from the subsequent briefing following submission of expert disclosure, the methods used to test the degree of window tinting. Defendants produced affidavits from Scott Hawkins (Docket Nos. 50, 55), the owner of Scott's Window Tinting in Lockport, New York (Docket No. 50, Hawkins 1st Aff. ¶ 1; Docket No. 55, Hawkins 2d Aff. ¶ 1). Plaintiffs dispute the facts stated based upon Hawkins' affidavit since he was not declared to be a defense expert (Docket No. 52, Pls. Statement, re Defs. Undisputed

Facts ¶ 2). Defendants did not reply as to this objection. Defendants were then ordered to produce expert disclosure as to Hawkins and plaintiffs were given leave to supplement their response to this motion in light of that disclosure (Docket No. 57). Defendants then served expert disclosure, identifying Hawkins as an expert (see letter Elizabeth Bergen, Esq., to Steven Cohen, Esq., Aug. 14, 2012, with enclosures and copies to Chambers). As noted above (at pages 8-9, supra; see Docket No. 58), plaintiffs raised objections to the methodology and testing device used by Hawkins, arguing that the device may not have been properly calibrated when the vehicle was inspected during discovery.

As noted in ordering defendants to provide expert disclosure (Docket No. 57, Order at 4), the key initial issue is the degree of tinting of Rougier's windows to determine whether defendants had reasonable suspicion to stop that vehicle. Plaintiffs claim that the windows were within the lawful degree of tinting for New York State (Docket No. 52, Pls. Statement re Defs. Undisputed Facts ¶ 10) and for Tennessee (see Docket No. 58, Cohen Decl. ¶ 16), and that this vehicle had driven this same route previously without being stopped for having obscured windows (Docket No. 52, Pls. Statement re Defs. Undisputed Facts ¶ 4). They submit four photographs "of the 1995 Lexus automobile owned by Plaintiff Thaddeus Rougier" (Docket No. 52, Pls. Atty. Decl. ¶ 8, Ex. G). In addition to questioning the calibration of defense expert's tint measuring device, plaintiffs had the windows tested and found that the tint was within lawful limits (Docket No. 58, Cohen Decl.).

The photographs (Docket No. 52, Ex. G) show the front driver's side (in two photographs), windshield, and the interior of front passenger's side of the vehicle through that side window. The photographs show (with varying degrees of visibility) a man inside that

vehicle wearing a white shirt.  No photograph of the rear window of that vehicle was filed as part

of the moving papers for this motion[2].

Under New York Vehicle and Traffic Law § 375[12-a] [b], no one can operate a motor

vehicle with a windshield covered with any material which has a "light transmittance of less than

seventy percent" beyond the upper six inches of the window, or side or rear windows with

material which has a light transmittance seventy percent.

There is an issue of fact whether deputy Tracy saw tint beyond the allowed percentage

under New York law, see also United States v. Jenkins, 324 F. Supp. 2d 502, 510 (S.D.N.Y.

2004) (Chin, J.) (court rejected reliance on purportedly illegally tinted window to support traffic

stop and subsequent search, after court inspection of vehicle finding such tinting on windows to

be legal).  Subsidiary to this issue are the issues related to the subsequent testing of the degree of

tinting and the reliability of these test (cf. Docket No. 58, Pls. Atty. Decl., Ex. 3, Decl. of Carol

Farrar, Esq., ¶¶ 6-12 (witnessed manner of Hawkins' examination of plaintiffs' vehicle

windows)).  Under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, (1993), Kuhmo Tire Co.

v. Carmichael, 526 U.S. 137 (1999), and Federal Rule of Evidence 702, this Court serves as a

gatekeeper for the admissibility of scientific evidence, to "ensure that any and all scientific

testimony . . . is not only relevant but reliable," Kuhmo Tire, supra, 526 U.S. at 147 (quoting

Daubert, supra, 509 U.S. at 589).  The measurement of window tinting is sufficiently technical

that the admissibility of testimony about it falls under Rule 702 and the Daubert/Kuhmo Tire

_____

[2]Defense counsel, in furnishing a copy of the expert disclosure served upon plaintiffs,
included with that disclosure a series of color photographs purportedly of Rougier's vehicle in
February 2012.  Since these were not made exhibits in support (or opposing) this motion, the
Court has not considered these photographs.

standards.  The variance in the results for measuring that tint between defense results from

Hawkins and plaintiffs' results show that another material issue of fact exists that precludes

summary judgment.

If this were the sole basis for stopping plaintiffs' vehicle, then summary judgment would

not be warranted for defendants.  But defendant Tracy also had before him the traffic infraction

of following too close.  Plaintiffs deny that they were driving too close (Docket No. 52, Pls. Atty.

Decl., Ex. B, Rougier EBT Tr. at 33 (estimated 40-50 feet from next car when stopped), Ex. A,

Henry EBT Tr. at 28-29 (estimated car was one to two car lengths from next car); Docket No. 52,

Pls. Memo. at 2-3)).  But for probable cause purposes, Tracy needed only have reasonable

suspicion that this violation had occurred, United States v. Stewart, 551 F.3d 187, 193 (2d Cir.

2009) (reversing the district court holding that a traffic stop violated defendant's right to be free

from unreasonable search and seizure).  A mistake in fact as to that probable cause does not

undermine the existence of reasonable suspicion, id.; see United States v. Jenkins, 452 F.3d 207,

212 (2d Cir. 2006).

Plaintiffs raise an additional ground that they were not informed of the charge by Tracy

during the stop.  Neither party stated whether the officers had to notify plaintiffs of the charge

(even if erroneous) in order to justify the probable cause for that stop.  Again, if the rationale

from Stewart and Jenkins is accepted and even an erroneous finding can support probable cause

to initiate a stop, the fact that the officer did not notify plaintiffs of the charge (albeit potentially

erroneous) does not deprive the officer of probable cause to conduct the stop.

Thus, whether the parties dispute whether or not plaintiffs were driving too close to traffic or whether the plaintiffs were informed of this charge are **not a material issue of fact to preclude summary judgment**.

IV.     Qualified Immunity

Defendants contend that they are entitled to qualified immunity because plaintiffs have not alleged a deprivation of a constitutional right and, if they had so alleged, defendants' conduct did not violate plaintiffs' clearly established rights, and if the stop and detainment somehow violated plaintiffs' rights, it was objectively reasonable for defendants to believe that their acts did not violate those rights (Docket No. 50, Defs. Memo. at 5-9, 15-25; Docket No. 55, Defs. Reply at 3).  The deprivation of constitutional rights will be considered below and, if necessary, whether it was objectively reasonable for defendants to believe that they did not violate plaintiffs' rights.

V.      Unreasonable Seizure, First Claim

Plaintiffs' First Claim turns on whether plaintiffs were lawfully stopped and detained.

A.      Initial Stop

Officer Tracy saw plaintiffs' vehicle following too close and having windows too tinted for state law.  While (as previously stated) there are issues of fact as to the degree of window tinting, we have the parties' differing views whether the plaintiffs' vehicle was following too close or not.  But for probable cause purposes (as stated above) Tracy needed only reasonable suspicion that a violation had occurred, Stewart, supra, 551 F.3d at 193, even if the basis for that violation is mistaken, id.; see Jenkins, supra, 452 F.3d at 212.  Thus, defendant Tracy had probable cause to stop and defense motion for judgment on this ground **should be granted**.

B.	Detainment to Investigate

Once plaintiffs' vehicle was lawfully stopped, it was reasonable for Tracy to ask for the driver's license and vehicle registration in conducting his investigation, <u>Pennsylvania v. Mimms</u>, 434 U.S. 106 (1977); <u>Arizona v. Johnson</u>, 555 U.S. 323, 331 (2009) (Docket No. 50, Defs. Memo. at 11), and plaintiffs did not have a right to be instantly released upon completion of that investigation, <u>see</u> <u>United States v. Harrison</u>, 606 F.3d 42, 45 (2d Cir. 2010) (<u>id.</u>).

In connection with a valid traffic stop, police may request driver's license, registration, run computer check, and issue a citation, <u>Sakoc v. Carlson</u>, No. 5:11-CV-290, 2012 U.S. Dist. LEXIS 128171, at *21 (D. Vt. Sept. 10, 2012) (quoting <u>United States v. Branch</u>, 537 F.3d 328, 335 (4th Cir. 2008) (citation and internal quotation marks omitted)).  While conducting the stop the officer may discover an independent basis for further investigation which "may necessitate prolonging the stop to investigate such wrongdoing," <u>Sakoc</u>, <u>supra</u>, 2012 U.S. Dist. LEXIS 128171, at *22; <u>United States v. Jenkins</u>, 452 F.3d 207, 214 (2d Cir. 2006).  "To determine whether an officer had a reasonable suspicion to extend the scope of a traffic stop, courts look to the 'totality of the circumstances[,]' <u>United States v. Arvizu</u>, 534 U.S. 266, 273 (2002), considered 'through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training,' <u>United States v. Bayless</u>, 201 F.3d 116, 133 (2d Cir. 2000)," <u>Sakoc</u>, <u>supra</u>, 2012 U.S. Dist. LEXIS 128171, at *22.  The stopping and detaining a vehicle and its occupants is a seizure under the Fourth and Fourteenth Amendments, <u>Brendlin v. California</u>, 551 U.S. 249 (2007) (Docket No. 52, Pls. Memo. at 15).  Thus, this initial stop and seizure was reasonable under the Fourth and Fourteenth Amendments.

C.      Initial Highway Search

Next, defendant officers searched the vehicle at the I-190, including having a drug

detection dog sniff the vehicle.  Plaintiffs complain that the length of time--three hours--of the

stop and detainment was unreasonable (Docket No. 52, Pls. Memo. at 16, 17) and defendant

officers lacked reasonable suspicion to search the vehicle after Tracy reviewed Rougier's license

and registration (id. at 21).  They point to issues of fact as to Rougier's condition that would raise

suspicion for continuing the stop (id. at 17-18), whether he was nervous and later became

belligerent during the course of the stop (id. at 17-18, 21).  Plaintiffs deny that Rougier was

nervous (e.g., Docket No. 52, Henry-Daley Aff. ¶ 5).  This would be a material fact except for the

fact that Rougier consented to the search of the vehicle (Docket No. 50, Defs. Statement ¶¶ 14-

15; cf. Docket No. 52, Pls. Statement, re Undisputed Fact ¶ 5).  Plaintiffs contend that Tracy

asked them if he could "look inside the vehicle, and Plaintiff Rougier consented," but "his

understanding as to the extent of looking inside his vehicle did not include the vehicle being

searched and researched over a three hour period and then taken to the border to be x-rayed"

(Docket No. 52, Pls. Statement, re Undisputed Fact ¶ 5).  Once Rougier exited the vehicle,

defendants claim that he consented to its search (Docket No. 50, Defs. Memo. at 11), see Florida

v. Jimeno, 500 U.S. 248, 250-51 (1991), and that requesting consent to search is not a seizure,

see California v. Hodari D., 499 U.S. 621, 626 (1991) (id.).  Plaintiffs counter that Rougier did

not consent (Docket No. 52, Pls. Statement, re Defs. Undisputed Facts ¶ 5).  But Rougier testified

in his deposition that he remembers an officer asked if the officer could inspect his vehicle and

that he "probably told him yes" (Docket No. 52, Pls. Atty. Decl. Ex. B, Rougier EBT Tr. at 45,

50-51).  This constitutes consent to search the vehicle, later memorialized by written consent to

search form (Docket No. 50, Defs. Atty. Aff. ¶ 19 & n.15, Ex. G, Tracy EBT Tr. at 28-29;

Docket No. 50, Defs. Statement ¶¶ 14-16; Docket No. 52, Pls. Atty. Decl., Ex. C, Tracy EBT Tr.

at 28-29), which Rougier refused to sign (Docket No. 50, Defs. Atty. Aff., Ex. G, Tracy EBT Tr.

at 28).  Plaintiffs do not contend that this consent was involuntary or coerced.  Plaintiffs did not

condition this consent or restrict the area to be searched when Tracy and the other officers took a

"look" inside the vehicle, see also United States v. Harris, No. 11 Cr. 92, 2011 U.S. Dist. LEXIS

82170, at *39 (S.D.N.Y. July 27, 2011) (in criminal prosecution, denying motion to suppress

where defendant's consent to search a bed room did not impose any conditions and a reasonable

officer would interpret this open ended consent to include searching containers found in the

room); United States v. Ng, No. 10-CR-254, 2011 U.S. Dist. LEXIS 70501, at *9 (E.D.N.Y. June

30, 2011) (another criminal prosecution, denying suppression where defendant agreed to search

upon conditions, including accompanying agents).  In the criminal suppression context, "the

standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of

'objective' reasonableness--what would the typical reasonable person have understood by the

exchange between the officer and the suspect?"  Florida v. Jimeno, 500 U.S. 248, 251 (1991)

(upholding consent to search car without limitation by driver on scope of search); see United

States v. Gandia, 424 F.3d 255, 265 (2d Cir. 2005).

     As in Jimeno, Rougier voluntarily consented to allow Tracy to look inside his car,

without limitation as to the scope or duration of that search.  It would have been objectively

reasonable for the officers to search the compartments of the vehicle.  When the contraband

sniffing dog had a positive hit in the trunk of the vehicle, the officers reasonably could continue

the search to find what caused the positive hit.

D.    Subsequent Inspection at Border Crossing

The defendant officers then had plaintiffs' car driven to the Lewiston-Queenston Bridge crossing to have the vehicle x-ray inspected.  Plaintiffs contend that defendants lacked probable cause to continue to detain them after producing the driver's license and registration.  Pertinent here is the continuation of that detainment after the canine inspection of the vehicle.  Plaintiffs claim there is a further issue of fact whether they consented to move the vehicle to the border crossing for the x-ray inspection (see Docket No. 52, Pls. Memo. at 18).

Although Rougier consented to the search of his vehicle where it was stopped on the I-190, there is a material issue of fact whether that consent extended to moving the vehicle to a second location for x-ray examination, cf. Winfield v. Trottier, No. 5:08-cv-278, 2011 U.S. Dist. LEXIS 107958, at *40-41 (D. Vt. Sept. 21, 2011) (denying, without prejudice, defense motion for summary judgment as to the duration of traffic stop where plaintiff consented to search but the scope of search was unclear in the record).  Neither party produced the consent to search form, which might have had language regarding the extent and location of a search.  Furthermore, as previously stated, Rougier did not sign this consent form.  The parties dispute whether plaintiffs separately consented to the relocation of their vehicle or to the x-ray.  This is a **material issue of fact that should preclude summary judgment for defendants.**

E.    Summary

Thus, there are some issues arising from plaintiffs' First Claim that raise material issues of fact that preclude summary judgment and other issues that are not issues of fact and judgment as to those discrete points should be granted to defendants.

VI.     Racial Profiling, Second Claim

Under this claim, plaintiffs contend that their rights under the Equal Protection Clause of the Fourteenth Amendment and under Title VI of the Civil Rights Act of 1974, 42 U.S.C. § 2000d, were violated because of their race and ethnicity.  Defendants again argue that plaintiffs fail to show proof of racial profiling (Docket No. 50, Defs. Memo. at 15).

First, the parties disagree upon the proper Equal Protection Clause doctrine that applies to plaintiffs' claim.  Plaintiffs argue that, under a theory of discriminatory application of a neutral law or discriminatory motivation underlying a facially neutral policy or statute, they need not plead or show disparate treatment of other similarly situated individuals (Docket No. 52, Pls. Memo. at 19-20), see Pyke v. Cuomo, 258 F.3d 107, 108-09 (2d Cir. 2001).  Defendants counter that, when challenging the application of a neutral law in a discriminatory fashion, plaintiffs need to demonstrate that the "conduct 'had a discriminatory effect and that it was motivated by a discriminatory purpose'" (Docket No. 50, Defs. Memo. at 15, quoting Wayte v. United States, 470 U.S. 598, 608 (1985)).  Defendants also argue that if plaintiffs' claim is for selective treatment, they then need to show that they were selectively treated with respect to others similarly situated and that the selection was based on an impermissible consideration, such as race or national origin (id.), see Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 790 (2d Cir. 2007); Gentile v. Nulty, 769 F. Supp. 2d 573, 578 (S.D.N.Y. 2011).

Narrowing plaintiffs' claim to a discriminatory application contention (and not a selective treatment claim), plaintiffs' contentions are based upon the unlawful stop and detention, arguing that plaintiffs' national origin was the only possible basis for Tracy's reasonable suspicion and that defendants have a policy of profiling motorists based upon their national origin or race (see

Docket No. 52, Pls. Memo. at 22). But plaintiffs provide no proof of either the basis for Tracy's suspicion beyond plaintiffs' supposition (because Tracy heard plaintiffs' accents and then saw and inspected their passports, cf. id.) or the existence of a policy for profiling.

Thus, defendants' motion for summary judgment against this claim (Docket No. 50) **should be granted**.

VII.    Right to Interstate Travel, Third Claim

The Fourteenth Amendment Privileges and Immunities Clause provides that "all persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; . . . ," U.S. Const. amend. XIV, § 1. Interstate travel is included as a privilege and immunity of citizens, Crandall v. Nev., 73 U.S. (6 Wall.) 35, 48-49 (1868), and is a fundamental right, United States v. Guest, 383 U.S. 745, 757 (1966) (Docket No. 52, Pls. Memo. at 23).

Plaintiffs raise as an objection the definitions of domicile and residence (Docket No. 52, Pls. Statement re Defs. Undisputed Facts ¶ 1). But these definitions of legal terms are questions of law. Defendants counter that the mere fact that a vehicle registered in Tennessee driving through and stopped in New York does not constitute a violation of the Privileges and Immunities Clause of the Fourteenth Amendment (Docket No. 50, Defs. Memo. at 19-20).

The Second Circuit has recognized that "'minor restrictions on travel simply do not amount to the denial of a fundamental right'" to travel, Torraco v. Port Auth. of N.Y. and N.J., 615 F.3d 129, 141 (2d Cir. 2010) (quoting Town of Southold v. Town of E. Hampton, 477 F.3d 38, 53-54 (2d Cir. 2007)) (id. at 20; cf. Docket No. 52, Pls. Memo. at 24 (conceding this

standard)).  In <u>Torraco</u>, the Second Circuit accepted that a plaintiff was delayed when he was arrested and held for 28 hours for weapons possession in his attempt to transport back to Florida his firearm when flying from La Guardia International Airport.  It was held there that this was a "minor restriction that did not result in a denial of the right to travel," <u>id.</u> at 141, 133.  Here, plaintiffs allege that they were detained for three hours and required to move from I-190 to the Lewiston-Queenston Bridge border crossing.  Under <u>Torraco</u>, plaintiffs fail to state a claim for deprivation of the privilege or immunity of the right to travel interstate; defendants' motion for summary judgment (Docket No. 50) on this claim should be **granted**.

VIII.   Qualified Immunity

Given the finding that issues of fact exist as to constitutional violations for plaintiffs' First Claim, the next issue is whether it is objectively reasonable for defendants to believe that they did not act to violate plaintiffs' constitutional rights in stopping and detaining plaintiffs so as to enjoy qualified immunity from plaintiffs' suit.

As plaintiffs note (Docket No. 52, Pls. Memo. at 15), the objectively reasonable test is met if "officers of reasonable competence could disagree" on the legality of defendants' actions, <u>Kent v. Katz</u>, 312 F.2d 568, 573 (2d Cir. 2002) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)).  "If any reasonable trier of fact could find that the defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment," <u>Lennon v. Miller</u>, 66 F.3d 416, 420 (2d Cir. 1995) (<u>id.</u>).

Defendants contend that, even assuming that plaintiffs' rights were violated, defendants' conduct was objectively reasonable and plaintiffs fail to show material issues of fact to the contrary (Docket No. 55, Defs. Reply Memo. at 3).

As discussed above regarding whether constitutional violations occurred, this Court found issues of fact as to the initial basis and duration of the stop. Reasonable officers may disagree whether to stop a motorist in this instance or whether to detain them to the point of transporting their vehicle to another location for intense, x-ray examination. The scope and duration of a Terry v. Ohio, 392 U.S. 1 (1968), stop may determine whether an investigative stop becomes so prolonged and intrusive as to be an arrest, requiring the requisite level of reasonable suspicion, United States v. Tehrani, 49 F.3d 54, 60 (2d Cir. 1995). In Tehrani, the Second Circuit recognized that there was no outside time limit for permissible Terry stop, id. (quoting United States v. Place, 462 U.S. 696, 709 (1983)); see also United States v. Sharpe, 470 U.S. 675, 685-86 (1985); see Sharpe, supra, 470 U.S. at 683 (detention at traffic stop for 20 minutes is reasonable). An investigative detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop," Florida v. Royer, 460 U.S. 491, 500 (1983). Although the Place Court declined to adopt an outside time limit for a Terry stop, the Court held that ninety minutes detaining defendant's luggage, coupled with not disclosing to him how long the luggage would be detained, where his luggage was being taken, and what arrangements would be made to recover the luggage if there was no suspicion, made that search unreasonable under the Fourth Amendment, 462 U.S. at 709-10.

Case law in this Circuit has found that a traffic stop and detention for an hour and a half violated the Fourth Amendment, Gilles v. Repicky, 511 F.3d 239, 245, 246 (2d Cir. 2007); but cf. Sakoc, 2012 U.S. Dist. LEXIS 128171, at *24-25 (roadside detention of 35 minutes held not to violate Fourth Amendment, citing cases of slightly longer duration, United States v. Davies, 768 F.2d 893, 902 (7th Cir. 1985) (45 minutes detention held reasonable under Terry). The

district court in <u>Sakoc</u> also held that defendant state trooper was shielded by qualified immunity because no determination could be made that a reasonable officer in that trooper's situation would understand the officer's actions to be unlawful, <u>id.</u> at *25.

The Second Circuit reversed the alternative holding that defendant was entitled to qualified immunity in <u>Gilles</u> because the district court had failed to consider whether plaintiff's detention was unconstitutionally prolonged, <u>Gilles</u>, <u>supra</u>, 511 F.3d at 247. Plaintiff in <u>Gilles</u> had established that she had a constitutional right to be free from unreasonably prolonged or intrusive investigative detention and defendant failed to demonstrate that it was objectively reasonable for him to believe that his conduct did not violate these rights, <u>id.</u> <u>See also</u> <u>Place</u>, <u>supra</u>, 462 U.S. at 699, 709-10 (ninety minutes detained defendant's luggage while awaiting search warrant, held to be prolonged seizure exceeding permissible <u>Terry</u>-type stop limits).

Here, the stop was for about three hours, twice the time found impermissible in <u>Place</u> and <u>Gilles</u>. But these courts did not address the qualified immunity issue whether it was objectively reasonable for officers to detain a suspect for that length of time. In <u>Winfield</u>, <u>supra</u>, 2011 U.S. Dist. 107958, at *39-41, the District of Vermont denied dismissal on qualified immunity grounds because the record there was unclear whether the prolonged traffic stop was due to plaintiff's consent to search. In this case, it is unclear how much of the three hours these plaintiffs were detained was due to plaintiffs' consented search or due to transport to the x-ray facility and conduct of that examination; the time that plaintiffs lawfully consented to the search reasonably prolonged the detainment. As noted above, the removal to the border facility and its x-ray raises issues of fact; any detention time due to an non-consented x-ray examination would prolong the

stop beyond objective reasonableness. On the record in this motion, issues of material fact exist that preclude summary judgment.

As a result, defendants' motion for summary judgment on the basis of qualified immunity (Docket No. 50) should be **denied**.

IX.    Summary

Therefore, it is recommended that defendants' motion for summary judgment (Docket No. 50) **be granted only in part**. Summary judgment should be granted to defendants dismissing claims against the Niagara County Sheriff's Department and against Niagara County arising from any respondeat superior allegations involving the Niagara County Sheriff. There are, however, material issues of fact--as to the degree of tint on the windows, the reasonable suspicion to continue plaintiffs' detainment after the initial investigation of driving papers and the search at the roadside, whether plaintiffs' consent extended to moving the vehicle and having it examined in an x-ray--which preclude summary judgment against plaintiffs' first claim. Plaintiffs' second and third claims, however, should be dismissed. As for what remains of plaintiffs' first claim, there are issues of fact that preclude granting defendants qualified immunity against liability for that claim.

**CONCLUSION**

Based upon the above, it is recommended that defendants' motion for summary judgment (Docket No. 50) be **granted as to claims against the Niagara County Sheriff's Department, granted as to Niagara County for claims arising from the Niagara County Sheriff,** but **granted** as to their second and third claims on their merits but **denied** as to plaintiffs' first claim.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

_/s/ Hugh B. Scott_
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
November 5, 2012