UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BEVERLY HENRY,
THADDEUS ROUGIER,

                              Plaintiffs,                    **Hon. Hugh B. Scott**

                                                                10CV800

                              v.                             **CONSENT**

                                                             **Order**

DEPUTY SHERIFF RAY TRACY, et al.,

                              Defendants.

Before the Court is plaintiffs' motions (under different rules) for relief from the judgment, namely (1) motion for judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50(b), (2) for a new trial, pursuant to Rules 50(d) and 59(b), (3) to amend the judgment, pursuant to Rule 59(e), or (4) for relief under Rule 60(b) (Docket No. 121)[1]. Following resolution of a conflict of interest with this Court and defense counsel, responses to this motion were due by July 8, 2014, replies by July 15, 2014, and the motion was deemed submitted (without oral argument) on July 15, 2014 (Docket No. 122).  Familiarity with the facts from prior proceedings and trial testimony is presumed.

BACKGROUND

This is a civil rights action commenced against the Niagara County Sheriff's Department, the County, and three deputies and a Sheriff's Department investigator for the stop, detention,

---

[1]In support of this motion, plaintiffs submit their attorney's initial Declaration, Memorandum of Law, Docket No. 121; and their counsel's Reply Declaration, Docket No. 126.  In opposition, defendants submit their attorney's Affidavit with Exhibits and Memorandum of Law, Docket No. 125.

and search of a vehicle approaching the Lewiston-Queenston Bridge on April 28, 2009.  At issue

is the stop, search, and seizure of plaintiffs by defendant deputies and Niagara County Sheriff's

Department investigator on April 28, 2009; familiarity with the basic facts is presumed from

proceedings had herein (see Docket No. 59, Report & Recommendation at 2-6; Docket No. 64,

Order).  Following defense motion for summary judgment (Docket No. 50), plaintiffs' second

cause of action for discrimination due to racial profiling and third cause of action for hindering

their interstate travel were dismissed (as well as claims against Niagara County and its Sheriff's

Department) (Docket No. 64), the focus for trial was the legitimacy of defendants' seizure of

plaintiffs for the duration of less than three hours.  What remained for trial were the legality of

the nearly three hour detention and seizure of plaintiffs' and their vehicle and the legality of

relocating the vehicle during that detention to conduct further investigation.

During the trial, plaintiffs argued that each event during the seizure merited

consideration; defendants continued to focus on the totality of events during the seizure, resisting

plaintiffs' attempts to challenge searches conducted during that period.

A five-day trial was held on May 12-19, 2014 (Docket Nos. 106-10).  The jury was given

a special verdict sheet with a series of questions.  The first question addressed whether plaintiffs

consented to the seizure at issue.  The jury then sent a series of notes to the Court (Docket

No. 113, Court Exs. 3A, 4A; see Docket No. 110; see also Docket No. 113, Court Ex. 8A (jury

seeking to discuss issues in outstanding notes with Court and counsel)), some of which were not

yet answered when they submitted its note that a verdict had been reached.  The jury then had its

outstanding questions addressed, including a reminder of the relevant portion of the jury charge,

and the jury was ordered to resume deliberations with this additional information (Docket No.

2

110; Docket No. 113, Court Ex. 9; cf. Docket No. 113, Court Ex. 5 (proposed jury instruction,

not given)).  Thus informed, the jury returned and announced that it had reached a verdict for

defendants (Docket Nos. 113, Court Ex. 10A, 112).  As plaintiffs argue (Docket No. 120, Pls.

Atty. Decl. ¶ 91), the jury stated that its questions were answered by the further instruction.

Judgment for defendants was entered on May 22, 2014 (Docket No. 115), with defendants later

filing their bill of costs (Docket No. 120; see also Text Notice of Intent to Tax Costs, July 1,

2014).

*Conflict with Defense Counsel*

After the jury reached its verdict, this Court learned that defense counsel was about to

become a member of board of directors the undersigned currently serves upon, cf. 28 U.S.C.

§ 455(a); Code of Conduct for United States Judges Canon 3C(1) ("a judge shall disqualify

himself . . . in a proceeding in which the judge's impartiality might reasonably be questioned"),

Canon 3 ("the duties of judicial office takes precedence over all other activities") (hereinafter

"Canon").  On May 27, 2014, this conflict was announced to the parties and they were to report

whether this case should proceed with the undersigned (Docket No. 116).  Both parties submitted

notices of their remittal of any conflict, pursuant to Canon 3D (see also Docket No. 118)

(defense counsel's letter)).

*Plaintiffs' Motion for a New Trial*

On June 16, 2014, plaintiffs filed their motion for a new trial or to amend or alter the

judgment (Docket No. 121).  Plaintiffs argue that a new trial should be granted pursuant to four

rules to revisit the judgment entered against them, principally arguing that there was no

evidentiary basis for the jury to answer the first special jury verdict question and questioning the

concept of consent in this case.  They move for a new trial, under Rule 50 because no reasonable

jury would find for defendants based on the evidence presented in this trial because the stop and

subsequent detention was overly prolonged and violated plaintiffs' rights (Docket No. 121, Pls.

Memo. at 13-17).  They alternatively seek to amend or add findings, pursuant to Rule 52(b),

because this Court erred in accepting the verdict before the jury's questions were answered (id. at

17-22, 20-21).  Plaintiffs next claim entitlement to a new trial, under Rule 59(a), because the

verdict was against the weight of the evidence for the reasons stated under the other rules (id. at

22).  They seek to alter or amend the judgment, under Rule 59(e), because this Court disregarded

United States Court of Appeals for the Second Circuit decisions in United States v. Young,

140 F.3d 453 (2d Cir. 1998), and United States v. Gregory, No. 99-1765, 2000 U.S. App. LEXIS

27588 (2d Cir. Nov. 1, 2000) (summary order), in electing to accept the jury's premature verdict

(id. at 23, 18, 20).  Plaintiffs argue that the jury was confused by special verdict question 1 and

that the passage of time did not resolve the jury's questions (Docket No. 120, Pls. Atty. Decl.

¶¶ 95, 96).  They believe that the jury believed that plaintiff did not voluntarily consent and that

what consent was given was given under duress (id. ¶ 97).  The jury had rendered its verdict

before receiving answers to its questions on consent (id. ¶ 98) and (given the late hour of the

verdict) rushed to reach that verdict without first receiving the answers to these questions (id. ¶

99).  Plaintiffs claim that the Court instructed the jury to not return to the deliberation room but

instead confer in the hall leading to that room to see if the instructions satisfied its questions (id.

¶ 100).  They contend that, had this jury been advised of the proper consent standard, it would

not have rendered a verdict for defendants (Docket No. 120, Pls. Memo. at 21).  Finally, and for

the same reasons stated for other rules, plaintiffs contend that they are entitled to relief from the

judgment under Rule 60(b)(1) for the jury's mistake or the catchall for "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6), based upon the exceptional circumstances argued under other rules (id. at 24-25).  They claim that this motion is timely under any of the rules cited (id. at 17 (Rule 50), 22 (Rule 52(b)), 22 (Rule 59(a)), 24 (Rule 59(e)), 24-25 (Rule 60(b)).

Defendants first argue that plaintiffs' Rule 50 motion should be denied because the verdict was fully supported by the evidence.  The jury had contradictory testimony whether Rougier consented to the search, with defendant Douglas testifying that he had requested and received Rougier's consent to x-ray the vehicle.  (Docket No. 125, Defs. Memo. at 1-2; see also Docket No. 125, Defs. Atty. Aff. ¶¶ 22, 26, 23-24, 25.)  Defendants claim that plaintiffs are now contending that Rougier did consent, but under some form of duress (Docket No. 125, Defs. Memo. at 2).  As a disputed fact issue, there was sufficient evidence for the jury to find for defendants as to consent (see id. at 2-4).

As for plaintiffs' Rule 52 motion, defendants first argue that this rule applies for bench trials, whereas this case was tried to verdict by the jury (id. at 4).  Defendants next argue, as for the Rule 59(a) motion, that the verdict was neither erroneous nor a miscarriage of justice (id. at 6-10).  Again, the Rule 59(a) issue turns on party credibility that was the jury's province rather than this Court on a post-trial motion (id. at 7-9).

Regarding plaintiffs' Rule 59(e) motion, defendants argue that one case which plaintiffs argue this Court disregarded, United States v. Young, supra, 140 F.3d 453, did not support plaintiffs' position (id. at 10, 5), while the second case they rely upon, United States v. Gregory, supra, 234 F.3d 1263, also fails to show plain error in handling the jury questions and the verdict return (id. at 10-11).  While jury question notes were pending, the jury submitted a note

5

indicating that they reached a verdict.  The jury was recalled, their questions were answered, and then they asked whether their questions were addressed.  (Id.)  Finally, as for plaintiffs' Rule 60(b) motion, defendants conclude that plaintiffs fail to show that the jury was mistaken, again with the putative mistake turning on the credibility of defendant Douglas and plaintiff Rougier (id. at 11-13).

In reply, plaintiffs contend that Rougier consented only to Tracy's initial request to "have a look" around their vehicle (Docket No. 126, Pls. Atty. Reply Decl. ¶ 5), with plaintiffs arguing that this initial look was used by defendants to justify a broader and expansive search and seizure beyond the scope plaintiffs consent (id. ¶ 6).  Plaintiffs renew their denial that Douglas asked them to move the vehicle to the border x-ray (id. ¶ 7); alternatively, if found that they were asked about the x-ray, such consent Rougier gave was coerced due to the threat of continued hours of detention if consent was not given while awaiting a search warrant (id.¶¶ 8, 12).  Plaintiffs do not point to testimony or other evidence of this coercion.  Plaintiffs note that, after the jury was further instructed following their questions, that they did not go into the deliberation room but conferred in the exit from the courtroom (id. ¶¶ 20-21), concluding that the jury was not allowed enough time to consider the jury instruction on coercion given in the further instructions (id.¶ 22)

DISCUSSION

I.      Applicable Standards

Plaintiffs cite five rules to reconsider the judgment (and implicitly the jury verdict) in this case.

For a motion for judgment as a matter of law after the verdict under Federal Rule 50(b), this Court must determine whether there was evidence for the jury to find for the opponents of

the motion, see 9A Charles A. Wright & Arthur R. Miller, Federal Civil Practice § 2524, at 253-54, 250 (Civil 2d ed. 1995).  Whether evidence at trial is sufficient to create an issue of fact for the jury is a question of law, id. at 249.  The Court here does not weigh evidence or pass on witness credibility, these are the province of the jury, id. at 255-56.  The weight of evidence is viewed in the light favoring the opponents to the motion for judgment and those parties are given the benefit of all reasonable inferences that may be drawn from that evidence, id. at 256-57, 259. Without weighing credibility or weighing evidence, the motion is denied if there can be only one conclusion that the verdict was one that reasonable persons could have reached, id. at 262, citing Simblet v. Maynard, 427 F.2d 1, 4 (2d Cir. 1970).

Rule 52 applies to findings of Court in cases tried without a jury or with an advisory jury, Fed. R. Civ. P. 52(a)(1) (see Docket No. 125, Defs. Memo. at 4).  Under Rule 52(b), a party may move to amend findings or make additional findings upon a showing of manifest error of fact or law, the existence of newly discovered evidence, or an intervening change in the law, see Flickinger v. Harold C. Brown & Co., No. 89CV1218, 1992 U.S. Dist. LEXIS 18967, at *6 (W.D.N.Y. Nov. 12, 1992) (Skretny, J.) (denying motion to amend) (see Docket No. 121, Pls. Memo. at 8).  This rule may address manifest errors of law or fact, Afrika v. New York, No. 12CV537, 2014 U.S. Dist. LEXIS 50179, at *2 (W.D.N.Y. Apr. 14, 2014) (Telesca, J.) (denying motion to amend) (see Docket No. 121, Pls. Memo. at 8).  A motion to amend findings "should not be a means for relitigating issues upon which" the movant did not prevail, Flickinger, supra, 1992 U.S. Dist. LEXIS 18967, at *6; Hoffman v. Beer Drivers & Salesmen's Local 888, 536 F.3d 1268, 1276 (9th Cir. 1976).

For a motion for a new trial or to amend a judgment under Rule 59, this Court has the power to avoid a miscarriage of justice and may order a new trial when deemed it is in the interests of justice to do so, 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2803, at 45 (Civil 2d 1995). "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial," id. at 46-47. The motion for a new trial is subject to this Court's sound discretion, id. at 47-48. Any error of law prejudicial to movants is a ground for a new trial, id., § 2805, at 55.

This Court also has the discretion regarding a motion to amend or alter a judgment under Rule 59(e), id., § 2810.1, at 124, but reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly, id. A motion to amend or alter may be used to correct manifest errors of law or fact upon which the judgment is based, id. at 125, or to prevent manifest injustice, id. at 126. Other grounds include newly discovered, but previously unavailable, evidence and intervening change in the controlling law, id. at 126, 127. Rule 59(e) is not to be used to relitigate old matters or raise arguments and present evidence that could have been raised before judgment was entered, id. at 127-28.

Under Rule 60(b), a party may move for relief from a judgment based upon reasons now argued by plaintiffs (among other stated reasons within that rule) mistake, inadvertence, surprise, or excusable neglect, Fed. R. Civ. P. 60(b)(1), or "any other reason that justifies relief," id., R.60(b)(6) (see Docket No. 121, Pls. Memo. at 11-13). A Rule 60(b) motion is addressed to this Court's sound discretion, Biernacki v. United States, No. 11CV973, 2014 U.S. Dist. LEXIS 48406, at *3 (W.D.N.Y. Apr. 8, 2014) (Schroeder, Mag. J.) (citation for internal quotation

omitted) (denying motion) (Docket No. 121, Pls. Memo. at 12); Caswell v. Racetti,

No. 11CV153, 2014 U.S. Dist. LEXIS 41415, at *7-8 (W.D.N.Y. Mar. 27, 2014) (Telesca, J.)

(Docket No. 121, Pls. Memo. at 12-13).  This rule "is 'a mechanism for "extraordinary judicial

relief" invoked only if the moving party demonstrates "exceptional circumstances,"'" id.

(quoting Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2009) (quoting in turn Paddington

Partners v. Bouchard, 34 F.3d 1132, 1142 (2d Cir. 1994)).  The movant bears the burden of proof

and must convince this Court that "exceptional circumstances" exist to vacate the judgment,

Caswell, supra, 2014 U.S. Dist. LEXIS 41415, at *2, 8 (Docket No. 121, Pls. Memo. at 12); see

id. at *7-8 (denying motion, in particular Rule 60(b)(6) relief); Gonzalez v. Crosby, 545 U.S.

524, 536 (2005) (extraordinary circumstances standard for Rule 60(b) relief).

 Each rule has a different deadline for a timely motion.  Most allow the timely motion to

be filed within 28 days of entry of judgment, Fed. R. Civ. P. 50(b), 52(b), 59(b), (e), or by

June 19, 2014, for the May 22, 2014, entry of judgment in this case.  Rule 60 differs, allowing a

timely motion "made within a reasonable time," specifically for a Rule 60(b)(1) motion to be

made within one year of entry of judgment, Fed. R. Civ. P. 60(c)(1).  Plaintiffs here filed a

timely motion under the cited rules.

II. Application

 A.  Conflict of Interest

 On April 30, 2014, before the start of this trial, defense counsel Brian Crosby was

appointed to the Board of Trustees of Niagara University, to formally join that board after this

jury trial concluded.  This fact was not known to the undersigned until after the jury reached its

verdict, on May 19, 2014, when a Niagara University e-mail was sent to Chambers and indicated

that it was copied to Mr. Crosby; that e-mail was read on May 21, 2014.  The undersigned has

served on the Niagara University board for several years but was not present when Mr. Crosby's

name was considered for addition to the board.  Upon reading the Niagara e-mail and confirming

that Mr. Crosby was both defense counsel and board member, the Court notified the parties of a

post-trial status conference (Docket Nos. 111, 114 (rescheduling conference for May 27, 2014)).

Section 455(a) of Title 28 of the United States Code requires a judge to disqualify

himself "in any proceeding in which his impartiality might reasonably be questioned," see also

id. § 455(d)(1) (defining "proceedings" to include, among others, trial or other stages of

litigation).  The judge is to inform himself of his personal interests, id. § 455(c).  Courts applying

this statute have held that determining a judge's impartiality must be judged from the perspective

of reasonable, uninvolved observer in light of the full record, In re Wirebound Boxes Antitrust

Litig., 724 F. Supp. 648, 650-51 (D. Minn. 1989).  The judge considering recusal needs to

consider all circumstances, both those in public as well as those hidden, and determine if a

reasonable, uninvolved observer would conclude that the judge's impartiality might be

questioned, Idaho v. Freeman, 507 F. Supp. 706, 722-23 (D. Idaho 1981).

Similarly, the Code of Conduct for United States Judges Canon 2(B) precludes judges

from allowing "family, social, political, financial, or other outside relationships to influence

judicial conduct or judgment," that the judge should not "permit others to convey the impression

that they are in a special position to influence the judge."  Further, Canon 3C(1) states that "a

judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might

reasonably be questioned," although this situation does not fit in the express five instances listed

in that provision.  Canon 4 allows judges to engage in extrajudicial activities, including serving

on civic, charitable, educational organizations, Canon 4B; <u>see also</u> Canon 4E (judge may serve as fiduciary).  Finally, Canon 1 requires a judge to uphold the integrity and independence of the judiciary and Canon 2 generally requires a judge to avoid impropriety and the appearance of impropriety in all activities, <u>see also</u> Adv. Opn. No. 2 (a judge's service on a non-profit organization board must not interfere with the prompt and proper performance of judicial duties).  "The duties of judicial office takes precedence over all other activities," Canon 3; <u>see</u> Adv. Opn. No. 2.

A conflict under Canon 3C(1) is subject to remittal if the conflict is disclosed on the record, counsel and the parties and their counsel confer outside the presence of the Court, and agree either on the record or in writing that the judge should not be disqualified, and if the judge is willing to participate, Canon 3D.  All parties have agreed to allow the undersigned to proceed with this case (<u>see</u> Docket No. 118).  This Court retains this case because the conflict arose at the conclusion of the trial and had no role in the decisions rendered in this case (as conceded by plaintiffs' counsel during the May 27 status conference) and that the Court's duty to sit arises (especially given the procedural state of this case).

There are no cases on point dealing with this scenario (trial counsel joining the judge's organization while the trial was underway).  The closest decision to this scenario is the Supreme Court's decision in <u>Liljeberg v. Health Services Acquisition Corp.</u>, 486 U.S. 847, 856-58, 861 (1988), where the judge also was a trustee of a university which had an interest in the corporate litigant before that judge but that judge failed to disqualify himself because he had forgotten the university's interest in the corporation.  The Court did not require judges to "perform the impossible" and recuse based on facts not known to them, <u>id.</u> at 860, but held that an objective

observer would have concluded that the district judge should have recused since his impartiality would have been questioned.  But in <u>Pippen v. Georgia-Pacific Gypsum, LLC</u>, 408 Fed. Appx. 299, 302-03 (11th Cir. 2011) (per curiam), the magistrate judge was an adjunct professor in the same university as principal counsel in a case before that judge; the Eleventh Circuit concluded that recusal was <u>not</u> required, although both the judge and attorney taught at the same institution, without more a reasonable person would not create doubt in a disinterested lay observer as to the judge's impartiality.  Compare <u>Sexson v. Servaas</u>, 830 F. Supp. 475 (S.D. Ind. 1993), where  the judge held that he did not have to recuse given his membership on a non-profit organization's board, given that the judge had no legal relationship with an attorney in defendant's law firm which also served on that board.

Given the timing of the disclosure and the proceedings to date in this case, the fact that the undersigned and defense counsel have yet to work on the Niagara board, and the remittal executed by all concerned and adopted by the undersigned, this case **will remain with the undersigned**.

B.  Consent

The substantive issue in plaintiffs' motion is whether there was sufficient evidence for the jury to find that they consented to the search of Rougier's vehicle and, by extension, their detention and seizure during the completion of that search and investigation.  Plaintiffs now focus on Rougier's consent for the removal of his vehicle to be x-rayed and the x-raying of it at the Lewiston-Queenston Bridge.  If, as found by the jury, plaintiffs consented (either initially or on the later request to x-ray), then the resulting almost three-hour detention, seizure, and investigation is not actionable, <u>see</u> <u>Florida v. Jimeno</u>, 500 U.S. 248 (1991); <u>United States v.</u>

Snow, 44 F.3d 133, 134-35 (2d Cir. 1995) (consent to search vehicle implicitly includes

containers within vehicle, even if purpose of search was not disclosed before consent was

obtained).  Consent to search generally is limited to what is objectively reasonable under the

circumstances and excludes intentional damage inflicted to the place to be searched, United

States v. Saucedo, 688 F.3d 863, 868 (7th Cir. 2012); United States v. Torres, 32 F.3d 225, 231-

32 (7th Cir. 1994), citing Jimeno, supra, 500 U.S. at 251.

        1.  Plaintiffs' Objection:  They Did Not Consent

        Plaintiffs argue (in different venues, see Docket No. 88, Pls. Objections to Defs. Pre-Trial

Submissions at 4) that judgment should be entered in their favor (or a new trial ordered) because

plaintiffs did not consent to the seizure as performed by defendants.  Plaintiffs raised this in

proposed jury instructions and in the verdict sheet, seeking an instruction that

> "IF THE JURY FINDS THAT THERE WAS CONSENT TO SEARCH BY A PARTY, AND THAT CONSENT WAS GIVEN IN THE PRESENCE OF COERCION, THREAT, OR DURESS, THE JURY MAY INFER NO CONSENT WAS GIVEN.
>
> "BOTH OCCUPANTS OF THE VEHICLE WOULD NEED TO CONSENT TO THE SEARCH OF A VEHICLE IN WHICH BOTH OF THEIR CONTENTS WERE LOCATED."

(Docket No. 113, Court Ex. 6).  They also argue that the jury should have been charged that

plaintiffs were defrauded into consenting to the search and seizure since defendants represented

either that plaintiffs would be arrested if they did not or misrepresented the duration of time

necessary to complete the operation.  They also contend that, assuming the answers to the jury's

questions addressed consent in some fashion, the jury should have been instructed to deliberate

further and, in rendering its verdict, failed to act based upon the answers to their questions.

Defendants disagreed with this language, arguing that the first question posed to the jury in the verdict sheet should be, "Did Plaintiffs consent to the seizure as described by this Court in its charge on consent" (Docket No. 112; see also Docket No. 74, Defs. Special Verdict Form, Ques. 1), the question actually first posed to the jury in the verdict sheet submitted to them. They argue that plaintiffs failed to seek coercion and passenger consent language in the jury instructions, hence waiving those contentions in a post-trial motion (Docket No. 125, Defs. Atty. Aff. ¶ 48).  On the response to the jury's questions during deliberation, defendants argue that the seizure described in the jury instruction referred to transportation of the vehicle to be x-rayed (id. ¶ 52; see also id.¶¶ 53-56).  Defendants also argue that plaintiffs make contradictory arguments, initially that Rougier did not consent and later that Rougier consented, but under duress (Docket No. 125, Defs. Memo. at 2).

Plaintiffs now argue in this motion that there is insufficient evidence of continuous consent by plaintiffs for the almost three-hour detention with the attendant investigation and search (see Docket No. 121, Pls. Memo. at 13-16).  They view this incident as a series of events, each of which required a renewed question whether plaintiffs consented to the next event, concluding that this period was unreasonable, prolonged and unsupported by any articulable reason or suspicion (id. at 15-16).  They point to Defendant Douglas' suggestion that a warrant may be needed to further search the vehicle (with further delay while awaiting the warrant) or that they could consent and the vehicle could be taken to the Lewiston-Queenston Bridge to be x-rayed by border authorities (Docket No. 121, Pls. Memo. at 3, 21).

One of the questions posed by the jury in its notes (see Docket No. 110) was the meaning of consent but this Court reinforced the earlier instruction which focused the jury on its recall of the evidence.

Viewing the evidence with reasonable inferences in defendants' favor as required by Rule 50(b), plaintiff testified that he may have initially consented to the search of the vehicle when Deputy Tracy approached the Lexus.  Both Tracy's request and that consent were unconditional as to scope or duration and there was no indication of coercion, threat, fraud, or duress to warrant plaintiffs' proposed charge.  Despite plaintiffs' argument, there was no evidence of coercion, fraud or duress during the detention period to somehow void or qualify Rougier's initial consent or make his consent to have the vehicle x-rayed be vitiated.  Plaintiffs' sole argument of coercion arises from the move to the border x-ray, arguing that the choice given to Rougier (if Douglas' testimony is to be believed) that he could consent or wait for warrant, and that the waiting option was coercive.  But the potential delay in waiting for a search warrant to be obtained is not coercion, cf. United States v. Cruz, 701 F. Supp. 440, 445-46 (S.D.N.Y. 1988) (agent's illusory promise that it would take minutes to get a warrant unless defendant consented did not make the consent voluntary); United States v. Calvente, 722 F.2d 1019, 1023 (2d Cir. 1983) (agent told suspect that a warrant could be obtained, advising suspect that a warrant could be obtained, when true, does not constitute coercion), cert. denied, 471 U.S 1021 (1985); United States v. Mayo, No. 2:13-CR-48, 2013 U.S. Dist. LEXIS 158866, at *15 (D. Vt. Nov. 6, 2013) (suspect, told that he could consent or wait for a warrant to issue, consented without coercion). Whether consent to a search is voluntary or was the product of duress or coercion is a question of fact to be determined from the totality of the circumstances, Schneckloth v. Bustamonte,

15

412 U.S. 218, 227 (1973).  Coercion in these situations arise where the law enforcement officers

lie about their ability to obtain a search warrant, deceiving the suspect into consenting, e.g.,

Cruz, supra, 701 F. Supp. at 445-47.  Here, the purported coercion is the combination of the

almost three-hour delay plaintiffs endured coupled with the possibility of an extended delay

awaiting a warrant if plaintiffs did not consent.

Furthermore, this search also falls under the automobile exception to the Fourth

Amendment warrant requirement, which allows the police to conduct a warrantless search of a

motor vehicle "if probable cause exists to believe the vehicle contains contraband or other

evidence of a crime."  United States v. Gaskin, 364 F.3d 438, 456 (2d Cir. 2004); Mayo, supra,

2013 U.S. Dist. LEXIS 158866, at *15-16.  Here, the evidence established that defendants had

probable cause to believe contraband was in the vehicle, from the positive hit of the detection

dog, Rougier's nervous and furtive reactions, and the other indicia discussed for this sustained

stop and search.

Rougier did not testify that, had he agreed to the move, he did so under the duress of the

alternative of waiting for a warrant or other cause.  As in Jimeno, supra, 500 U.S. at 251,

defendants sought to search the vehicle without any restriction and Rougier consented.  It was

objectively reasonable for the police to conclude that Rougier's general consent included the

contents of the vehicle, id.  The investigation and subsequent search up to the suggestion to move

the vehicle to the border for x-ray examination (including the canine search) was objectively

reasonable.  As for the damages plaintiffs testified to occurring during the detention, there was

sufficient evidence to create an issue of fact for the jury to determine Rougier's consent was

exceeded by defendants' actions.  There also was an issue of fact regarding whether Rougier

consented to move the vehicle for the x-ray examination, despite the judicial notice taken that a warrant was not necessary to continue that search.

Despite attempts by defendants to separate the stop (removed from this case in motion practice) from the search (which they claim plaintiffs did not allege was violated), and plaintiffs' argument that this was a series of distinct incidents, the near three-hour incident was a unified series of events, consisting of the initial stop; investigation and request for consent to search; the initial, unconditional grant of consent; the initial search; further investigation and suspicion; canine search of vehicle; canine alerting to rear of vehicle; request to move vehicle to the border x-ray; consent to that removal and x-ray; and conducting of the x-ray.  Plaintiffs never alleged separate causes of action for these various steps; instead, they plead and argued that this was a single, three-hour incident, with in which different events occurred.   As suspicion built upon suspicion, defendants detained plaintiffs longer and increased the level of investigation and scrutiny (from visible inspection to dog to x-ray).  Then Investigator Douglas suggests moving the car to the Lewiston-Queenston Bridge for use of its x-ray equipment.  There was testimony that plaintiff Rougier consented to this relocation.  Search, seizure, and detention were blended together during this nearly three hour period.  Despite defense arguments that plaintiffs failed to allege a search claim, this episode tied together search and seizure.  Technically, the consent defendants rely upon was consent to search the vehicle.  Inherent with that consent to search was detaining or seizure of the vehicle and the persons with that vehicle until that search was completed, see Terry v. Ohio, 392 U.S. 1, 16 (1968); Brendlin v. California, 551 U.S. 249 (2007).

17

While defendants seek to distinguish search from seizure, the facts here show that these two concepts were intertwined during the almost three-hour detention.  There was seizure of property and of persons.  Seizure occurs when there is some meaningful interference with an individual's possessory interest in property seized, Maryland v. Macon, 472 U.S. 463, 469 (1985) (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)); Dejesus v. Village of Pelham Manor, 282 F. Supp.2d 162 (S.D.N.Y. 2003) (officer briefly detains an individual and restrains them, they are "seized" and the limitations of the Fourth Amendment become applicable).  A person is seized whenever a police officer accosts that person and restrains his or her freedom to walk away, Terry, supra, 392 U.S. at 16.  A search or seizure may violate the Fourth Amendment "by virtue of its intolerable intensity and scope," id. at 18; Kremen v. United States, 353 U.S. 346 (1957); Go-Bart Importing Co. v. United States, 282 U.S. 344, 356-58 (1931).  A passenger in a vehicle stopped by the police is also seized within the Fourth Amendment, Brendlin, supra, 551 U.S. 249.

2.     Passenger Henry's Consent

Plaintiffs next argue that Henry never consented to the search or the resulting detention and seizure, focusing in this motion to the removal and x-ray of the vehicle.  Defendants argued during the trial that the owner or driver of a vehicle may consent to its search and search of its contents including the property of passengers inside that vehicle, United States v. Snow, 44 F.3d 133, 135 (2d Cir. 1995); cf. United States v. Zapata, 180 F.3d 1237, 1241-42 (11th Cir. 1999) (police officer asked for consent to search driver and passenger, both granting consent).  Plaintiffs object that Beverly Henry never consented to the search or her detention during the search of Rougier's vehicle.  As a passenger in a stopped car, Henry has standing to challenge

the constitutionality of the stop, <u>Brendlin</u>, <u>supra</u>, 551 U.S. at 254-63.  One district court has held

that a passenger's consent is not required where the driver has consented to a search, <u>United</u>

<u>States v. Lopez</u>, No. S1 10Cr. 798(PAC), 2011 U.S. Dist. LEXIS 91349, at *4-5 (S.D.N.Y. Aug.

16, 2011), holding that the passenger lacked standing to seek suppression of evidence seized

during the search of the vehicle, <u>id.</u> at *4.  This differs from <u>United States v. Jaras</u>, 86 F.3d 383,

390 (5th Cir. 1996), where the driver, while granting consent to search, noted that some of the

bags were his and others were not.  The Fifth Circuit upheld suppression of evidence from bags

not owned by the driver since the officers did not seek the passenger's consent to search them,

<u>id.</u>; <u>see</u>  <u>United States v. Sparks</u>, No. 03 CR. 269, 2004 U.S. Dist. LEXIS 2278 (S.D.N.Y. Feb.

13, 2004), at *22 n.6.  Where the driver's consent to search is not qualified in any way (such as

distinguishing ownership of items within the vehicle or an assertion of ownership of a particular

item), <u>see</u> <u>Sparks</u>, <u>supra</u>, 2004 U.S. Dist. LEXIS 2278, at *22 n.6, the driver's consent allows for

a search of all items in the vehicle despite its ownership.

      Here, Rougier was asked generally if he consented to a search and he answered

affirmatively, without any condition or qualification (such as he was speaking only for himself

and not for his passenger, Henry).  As with the duration of the eventual detention and scope of

the investigation and search conducted during that detention, Rougier's general consent was not

qualified.

      3.      Acceptance of Jury Verdict Before Answering the Jury's Questions

      Plaintiffs next object to the Court disregarding <u>Young</u> and <u>Gregory</u> in accepting the

verdict prematurely before the jury had its questions answered (Docket No. 121, Pls. Memo. at

23).  First, <u>Gregory</u> was a summary order from 2000 and under the Second Circuit's rules, there

are limits to the citation of unpublished opinions such as summary orders as binding authority. Rule 32.1.1 currently provides that "rulings by summary order do not have precedential effect," 2d Cir. R. 32.1.1(a); see also id., R. 32.1.1(b)(2) (summary orders before January 1, 2007, generally may not be cited); Fed. R. App. P. 32.1(a)(1) (courts may not prohibit citation to unpublished opinions rendered after 2007). Thus, there is no error for this Court not relying upon the summary order in Gregory in handling the jury notes and the verdict.

On its merits, in Gregory the defendant argued that it was plain error for the court to accept the jury's verdict while a jury question remained unanswered. The Second Circuit held that the district court answered the question by instructing them and that the instruction given was "clear and correct," 2000 U.S. App. LEXIS 27588, at *4-5, and the jury came to its own conclusion while the judge considered the question, id. at *5; see Stathos v. Bowden, 728 F.2d 15, 19 (1st Cir. 1984) (finding no plain error in civil rights trial where court accepted the verdict before answering a jury question).

In Young, supra, 140 F.3d 453 (2d Cir. 1998), the issue was whether a court could accept a jury verdict returned one hour after the jury asked to have part of the charge read back without that read back, id. at 454-55. While denying relief in that case, the Second Circuit suggested considerations for other trial courts to bear in mind in similar circumstances, id. at 455, 456-57. Relief was not available in that case because defense counsel did not object to the verdict being received or that the readback not being done, id. at 457. The Second Circuit states that the readback of portions of the trial record, including jury instructions, are committed to the sound exercise of trial court's discretion, id. at 456 (citing cases). While the court prefers honoring the jury's request, the Second Circuit has accepted that "to promote the interest in informed jury

20

decision-making without unduly delaying court proceedings, trial judges should bear several considerations in mind. These include the jurors' need to review the material before reaching a verdict, assessed against the difficulty in locating the specific material requested, the possibility of undue emphasis on any portion of the record, and the possibility of undue delay in the trial," id. (citing United States v. Escotto, 121 F.3d 81, 84 (2d Cir. 1997); United States v. Criollo, 962 F.2d 241, 243 (2d Cir. 1992)), with these factors usually favoring answering the jury's question, id.  The Government in that case argued that the jury possibly had changed its mind about the question and reached a verdict, id., but the court considered that the jury may have concluded that its unanswered question was denied, id.  This scenario was held not to be plain error because defendant failed to object to the question not being answered or to the verdict being rendered, id. at 456-57.

In the case at bar, as jury notes were posed with questions about the definition of "consent," the Court and counsel considered the response to the questions.  Before resolution of the answer to these questions and the Court could call the jury in to address its notes, the jury then sent a note indicating that it reached a verdict.  This Court then called the jury in, instructed them and answered their questions and had the jury return to deliberation.  The verdict was not opened at that time.  Plaintiffs here acknowledge that, like the defense in Young, they did not immediately object to the reading of the verdict, but distinguish Young and Gregory because the verdict "was rendered before the jury's questions had been answered" (Docket No. 121, Pls. Memo. at 20-21).  But that is not the case; the jury had reached a verdict (which was not disclosed when the jury was called in to address their prior notes) and the jury (after the questions were addressed) was instructed to return to deliberate.  The jury then returned and

21

announced that it had reached a verdict.  The deliberation was brief, but no objection was raised that the jury rushed its deliberations.

As in Young, supra, 140 F.3d at 457, plaintiffs here did not object either to the jury deliberating while their questions were pending or the verdict being rendered after having those questions answered.  They never insisted that the jury, after being instructed again in response to its questions, return to deliberate or seek such deliberation over a specific period of time.  While noting the late hour before the jury rendered its verdict, the jury was asked if it wished to proceed or resume the next day and the jury indicated that it wanted to finish.  There was nothing indicating that the verdict was rushed or that the jury was anxious to finish despite the questions posed and answered.  The jury was polled (Docket No. 110).  The jury apparently was satisfied with the further instructions that addressed their questions to complete their deliberations or concluded that their deliberations did not need those questions answered.

The Second Circuit in dictum in Young sets out its preference that jury questions be answered or notify the jury the amount of time necessary to answer its question or to locate and read back from the transcribed record, id. at 456, but the court never established that this was a rule for trial practice, leaving it instead to the sound discretion of the trial judge how that situation should be addressed.  As was found by Young, "once the jury announced its readiness to return a verdict, it was up to . . . counsel to decide whether to accede to having the verdict promptly announced or to request the Judge to ask the jurors if the still wished the readback," id. at 456-57; plaintiffs here did not object.  Under the Federal Rule of Criminal Procedure applicable in the Young trial, absent either an objection to receipt of the verdict or to a request for a further inquiry of the jury, the trial court's procedure did not warrant reversal unless it was

22

plain error, id. at 457 (citing Fed. R. Crim. P. 52(b) (plain error rule)).  A similar standard applies in a civil case where the exercise of discretion is the same.  The procedure followed here can be reversed only on plain error.  No such error occurred.

     C.   Pending Motions to Alter or Amend Judgment

     Under Rule 50(b), there was evidence for the jury to find for defendants, opponents to plaintiffs' motion; therefore, plaintiffs' motion on this ground is **denied**.  As for Rule 52(b), that rule would apply if this were a bench trial.  Since it was a jury trial, plaintiffs **are not entitled to relief** under that rule and their motion is thus **denied**.  As for plaintiffs' Rule 59(a) and (e) motions, since the perceived error is the factual dispute of Rougier's consent, there is sufficient evidence that there would be no miscarriage of justice to uphold the verdict and judgment entered herein.  Regarding the form of deliberation the jury took after being further instructed and having their questions answered, there was no miscarriage of justice in not directing the jury to go to the deliberation room and consider the answers and their verdict.  These motions also are **denied**.  Finally, as for plaintiffs' Rule 60(b) motion, there was no mistake by the jury, it made credibility determinations about Rougier's consent.  Their motion under Rule 60 also is **denied**.

CONCLUSION

For the reasons stated above, plaintiffs' motions (Docket No. 120) for judgment as a

matter of law, a new trial, or amended judgment under Rules 50(b), 52(b), 59(b) and (e), and

60(b) is **denied**.

So Ordered.

/s/ Hugh B. Scott

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
       July 18, 2014